Belknap,
April 6, 1926.

GEORGE C. CLARK & a., *Trustees, v.* BELLE CAMPBELL & a.

A private trust created by will is void if the beneficiaries are not definite and ascertainable.

A bequest providing that the trustees under the will shall distribute such articles of the testator's personal belongings as they see fit to such of the testator's friends as they may select, is void because of the indefiniteness of the beneficiaries.

PETITION for instructions, by the trustees under the will of Charles H. Cummings. Questions, which appear in the opinion, were reserved without ruling by *Sawyer*, J.

*Owen & Veazey*, for the plaintiffs.

*Frank P. Tilton* and *Jeremy R. Waldron*, attorney-general, for the defendants.

SNOW, J. 1. The ninth clause of the will of deceased reads: "My estate will comprise so many and such a variety of articles of personal property such as books, photographic albums, pictures, statuary, bronzes, bric-a-brac, hunting and fishing equipment, antiques, rugs, scrapbooks, canes and masonic jewels, that probably I shall not distribute all, and perhaps no great part thereof during my life by gift among my friends. Each of my trustees is competent by reason of familiarity with the property, my wishes and friendships, to wisely distribute some portion at least of said property. I therefore give and bequeath to my trustees all my property embraced within the classification aforesaid in trust to make disposal by the way of a memento from myself, of such articles to such of my friends as they, my trustees, shall select. All of said property, not so disposed of by them, my trustees are directed to sell and the proceeds of such sale or sales to become and be disposed of as a part of the residue

of my estate." The question here reserved is whether or not the enumeration of chattels in this clause was intended to be restrictive or merely indicative of the variety of the personal property bequeathed. The question is immaterial if the bequest for the benefit of the testator's "friends" must fail for the want of certainty of the beneficiaries.

By the common law there cannot be a valid bequest to an indefinite person. There must be a beneficiary or a class of beneficiaries indicated in the will capable of coming into court and claiming the benefit of the bequest. *Adve* v. *Smith*, 44 Conn. 60. This principle applies to private but not to public trusts and charities. *Harrington* v. *Pier*, 105 Wis. 485; 28 R. C. L. 339, 340; *Morice* v. *Bishop of Durham*, 9 Ves. 399, 10 Ves. 521. The basis assigned for this distinction is the difference in the enforcibility of the two classes of trusts. In the former there being no definite *cestui que trust* to assert his right, there is no one who can compel performance, with the consequent unjust enrichment of the trustee; while in the case of the latter, performance is considered to be sufficiently secured by the authority of the attorney-general to invoke the power of the courts. The soundness of this distinction and the grounds upon which it rests, as applied to cases where the trustee is willing to act, has been questioned by distinguished authorities (5 Harv. L. Rev. 390, 394, 395; 65 Univ. Pa. L. Rev. 538, 540; 37 Harv. L. Rev. 687–8) and has been supported by other authorities of equal note (15 Harv. L. Rev. 510, 513–515, 530). It is, however, conceded by the former that, since the doctrine was first stated in *Morice* v. *Bishop of Durham, supra,* more than a century ago, it has remained unchallenged and has been followed by the courts in a practically unbroken line of decisions. 5 Harv. L. Rev. 392, 397; 65 Univ. Pa. L. Rev. 539; 37 Harv. L. Rev. 688; 26 R. C. L. 1189. Although it be conceded that the doctrine is not a legal necessity (15 Harv. L. Rev. 515) the fact that it has never been impeached affords strong evidence that in its practical application it has been generally found just and reasonable. This is a sufficient ground for continued adherence to the rule.

Nor is the force of the precedents impaired by the fact that, of necessity, some exceptions to the application of the doctrine have been recognized, as in the case of bequests to an executor to pay funeral expenses, which have been permitted to take effect notwithstanding the want of a beneficiary capable of invoking judicial power for their enforcement. 15 Harv. L. Rev. 515, 530; *Gafney* v.

*Kenison*, 64 N. H. 354, 356. See *Smart* v. *Durham*, 77 N. H. 56, 58–60.

A more liberal rule as to what constitutes a charitable as distinguished from a private trust prevails here than that which obtained at the time the opinion in *Morice* v. *Bishop of Durham, supra,* was rendered. It would seem clear that it is in this respect only that Dean Ames treats *Goodale* v. *Mooney,* 60 N. H. 528, as drawing away from the earlier case. 5 Harv. L. Rev. 392. "An examination of the authorities generally will show that in modern times instances of testamentary gifts being rendered void for uncertainty have been of much less frequent occurrence than formerly, and that courts are now quite uniformly reluctant to admit uncertainty as a ground for avoiding the formal disposition of property." *Gafney* v. *Kenison,* 64 N. H. 354, 356. The court was there construing a bequest in trust for the relief of the most destitute of the testator's relatives, and the language above quoted had reference more particularly to testamentary provisions establishing charitable trusts as they are interpreted in this jurisdiction. *Haynes* v. *Carr,* 70 N. H. 463, 481; *Carter* v. *Whitcomb,* 74 N. H. 482, 487, and cases cited. The more liberal construction of charitable uses existing here is due in part to the facts that our courts of equity have original and inherent jurisdiction over charities independently of St. 43 Eliz., *c.* 4 (*Goodale* v. *Mooney, supra,* 533, 534; *Webster* v. *Sughrow,* 69 N. H. 380, 381), and are unrestrained by local statutes which in some states have "reduced charitable bequests to the level of legacies for private purposes." *Haynes* v. *Carr, supra,* 481, 482, 483; *Glover* v. *Baker,* 76 N. H. 393, 414, 417. The general object of a charitable use having been defined, or a means of fixing it having been provided by the testator, indefiniteness of the beneficiaries, if not an essential element of such a trust, at most does not render it void. *Haynes* v. *Carr, supra,* 481, 482, 484. In the case of purely private trusts, however, the common law rule that there must be a definite or ascertainable beneficiary has always prevailed in this jurisdiction.

"A gift to trustees to dispose of the same as they think fit is too uncertain to be carried out by the court." Theobald on Wills, 7th ed., 495; *Fowler* v. *Garlike* (1830), 1 R. & M. 232, 235; *Ellis* v. *Selby* (1836), 1 M. & Cr. 286, 298; *Buckle* v. *Briston* (1864), 10 Jur. N. S. 1095; *Yeap Cheap Neo* v. *Ong Ching Neo* (1875), L. R. 6 P. C. 381, 392; *Fenton* v. *Nevin* (1893), 31 L. R. Ir. 478; *Olliffe* v. *Wells* (1881), 130 Mass. 221, 223; *Davison* v. *Wyman* (1913), 214 Mass. 192; *Blunt* v. *Taylor* (1918), 230 Mass. 303.

That the foregoing is the established doctrine seems to be conceded, but it is contended in argument that it was not the intention of the testator by the ninth clause to create a trust, at least as respects the selected articles, but to make an absolute gift thereof to the trustees individually. It is suggested that the recital of the qualifications of the trustees may be considered as investing them with a personal and non-official character and that the word "trustees" is merely descriptive of the persons who had been earlier named as trustees and was not intended to limit the capacity in which they were to act here. Assuming this construction, the petitioners rely upon *Gibbs* v. *Rumsey*, 35 Eng. Rep. 311; *Wells* v. *Doane*, 3 Gray 201; *Davison* v. *Wyman*, 214 Mass. 192, 194; *Norman* v. *Prince*, 40 R. I. 402; *Noane* v. *Larkine*, 1 L. R. Ir. 103; *Walter* v. *Walter*, 113 N. Y. S. 465; *Harvey* v. *Griggs*, 12 Del. Ch. 232. It is a sufficient answer to this contention that the language of the ninth clause does not warrant the assumed construction. The assertion of the competency of the trustees wisely to distribute the articles in question by reason of their familiarity with the testator's property, wishes and friendships seems quite as consistent with a design to clothe them with a trusteeship as with an intention to impose upon them a moral obligation only. *Blunt* v. *Taylor*, 230 Mass. 303, 305. If, however, the recited qualifications had the significance ascribed to them, the language of the bequest is too plain to admit of the assumed construction. When the clause is elided of unnecessary verbiage the testator is made to say: "I give to my trustees my property (of the described class) in trust to make disposal of to such of my friends as they shall select." It is difficult to conceive of language more clearly disclosing an intention to create a trust. However, if the trust idea introduced by the words "trustees" and "in trust" were not controlling, all the evidence within the will confirms such idea. In the first clause of the will the testator nominates three trustees and an alternate in case of vacancy. Throughout the will these nominees are repeatedly and invariably referred to as "my trustees" whenever the testator is dealing with their trust duties. Whenever rights are conferred upon them individually, as happens in the fifth, sixth and eighth clauses, they are as invariably severally referred to solely by their individual names. The clause under consideration (ninth) expressly provides for the disposal of only a portion of the classified articles and imposes upon the trustees the duty of selling the balance thereof and adding the proceeds to the residue which they are to continue to hold and ad-

minister in their capacity as trustees. The proceeds thus accruing under this clause are expressly referred to in the eleventh clause in the enumeration of the ultimate funds to be distributed by them as trustees "in and among such charitable . . . institutions" as they shall select and designate. The conclusion is inescapable that there was no intention to bestow any part of the property enumerated in the ninth clause upon the trustees for their own benefit. This necessarily follows since the direction to make disposal is clearly as broad as the gift.

It is further sought to sustain the bequest as a power. The distinction apparently relied upon is that a power, unlike a trust (*Goodale* v. *Mooney*, 60 N. H. 528, 534), is not imperative and leaves the act to be done at the will of the donee of the power. 21 R. C. L. 773; 26 R. C. L. 1169. But the ninth clause by its terms imposes upon the trustees the imperative duty to dispose of the selected articles among the testator's friends. If, therefore, the authority bestowed by the testator by the use of a loose terminology may be called a power, it is not an optional power but a power coupled with a trust to which the principles incident to a trust so far as here involved clearly apply. *People* v. *Kaiser*, 306 Ill. 313, 137 N. E. 827, 828; 1 Tiffany, Real Property, s. 317; *Greenough* v. *Wells*, 10 Cush. 571, 576; *Sweeney* v. *Warren*, 127 N. Y. 426; *Read* v. *Williams* 125 N. Y. 560; 26 R. C. L. 1169.

We must, therefore, conclude that this clause presents the case of an attempt to create a private trust and clearly falls within the principle of well-considered authorities. *Nichols* v. *Allen*, 130 Mass. 211, 212; *Blunt* v. *Taylor*, 230 Mass. 303, 305. In so far as the cases cited by the petitioners upon this phase of the case are not readily distinguishable from the case at bar they are in conflict with the great weight of authority.

The question presented, therefore, is whether or not the ninth clause provides for definite and ascertainable beneficiaries so that the bequest therein can be sustained as a private trust. In this state the identity of a beneficiary is a question of fact to be found from the language of the will construed in the light of all the competent evidence rather than by the application of arbitrary rules of law. It is believed that in no other jurisdiction is there greater liberality shown in seeking the intention of the testator in this, as in other particulars. *Trustees* v. *Peaslee*, 15 N. H. 317; *Goodhue* v. *Clark*, 37 N. H. 525, 532; *Goodale* v. *Mooney*, *supra*; *Harriman* v. *Harriman*, 59 N. H. 135; *Galloway* v. *Babb*, 77 N. H. 259, 260;

*Remick* v. *Merrill*, 80 N. H. 225, 227; *Adams* v. *Hospital, ante,* 260. We find, however, no case in which our courts have sustained a gift where the testator has attempted to delegate to a trustee the arbitrary selection of the beneficiaries of his bounty through means of a private trust.

Like the direct legatees in a will, the beneficiaries under a trust may be designated by class. But in such case the class must be capable of delimitation, as "brothers and sisters," "children," "issue," "nephews and nieces." A bequest giving the executor authority to distribute his property "among his relatives and for benevolent objects in such sums as in their judgment shall be for the best" was sustained upon evidence within the will that by "relatives" the testator intended such of his relatives within the statute of distributions as were needy, and thus brought the bequest within the line of charitable gifts and excluded all others as individuals. *Goodale* v. *Mooney,* 60 N. H. 528, 536. See *Portsmouth* v. *Shackford,* 46 N. H. 423, 425; *Gafney* v. *Kenison,* 64 N. H. 354, 356. Where a testator bequeathed his stocks to be apportioned to his "relations" according to the discretion of the trustee, to be enjoyed by them after his decease, it was held to be a power to appoint amongst his relations who were next of kin under the statute of distribution. *Varrell* v. *Wendell,* 20 N. H. 431, 436. Likewise where a devise over after a particular estate was to the testator's "next of kin" *simpliciter.* *Pinkham* v. *Blair,* 57 N. H. 226, 243. See *Snow* v. *Durgin,* 70 N. H. 121, 122. Unless the will discloses a plain purpose to the contrary, the words "relatives" or "relations," to prevent gifts from being void for uncertainty, are commonly construed to mean those who would take under statutes of distribution or descent. 2 Schouler, Wills, s. 1008; Thompson, Wills, s. 181; *Thompson* v. *Thornton,* 197 Mass. 273; *Drew* v. *Wakefield,* 54 Me. 291, 298.

In the case now under consideration the *cestuis que trustent* are designated as the "friends" of the testator. The word "friends" unlike "relations" has no accepted statutory or other controlling limitations, and in fact has no precise sense at all. Friendship is a word of broad and varied application. It is commonly used to describe the undefinable relationships which exist not only between those connected by ties of kinship or marriage, but as well between strangers in blood, and which vary in degree from the greatest intimacy to an acquaintance more or less casual. "Friend" is sometimes used in contradistinction to "enemy." "A friendless man is an outlaw." Cowell, Bouvier. Although the word was formerly

sometimes used as synonymous with relatives (5 Com. Dig. 336; Sugden on Powers (1823), 519), there is no evidence that it was so used here. The inference is to the contrary. The testator in the will refers to eight different persons, some of them already deceased, by the title of "friends." He never uses the appellation concurrently with "nephew" or "niece," which words occur several times in describing legatees. Nor is there anything to indicate that the word "friends" in the ninth clause was intended to apply only to those who had been thus referred to in the will. See *Hall* v. *Wiggin*, 67 N. H. 89, 90. There is no express evidence that the word is used in any restricted sense. The only implied limitation of the class is that fixed by the boundaries of the familiarity of the testator's trustees with his friendships. If such familiarity could be held to constitute such a line of demarcation as to define an ascertainable group, it is to be noted that the gift is not to such group as a class, the members of which are to take in some definite proportion (1 Jarman, Wills, 534; 1 Schouler, Wills, *s.* 1011) or according to their needs, but the disposition is to "such of my friends as they, my trustees, may select." No sufficient criterion is furnished to govern the selection of the individuals from the class. The assertion of the testator's confidence in the competency of his trustees "to wisely distribute some portion" of the enumerated articles "by reason of familiarity with the property, my wishes and friendships," does not furnish such a criterion. Where, after expressing confidence in the discretion of his executors and trustees, the testator gave the remainder of his estate to them "for certain purposes which I have made known to them" and authorized them to "make such distribution and division of my estate as I have indicated to them, and as they shall deem proper for the fulfillment of my wishes so well known to them," it was held that the trust created was not sufficiently definite for execution. *Blunt* v. *Taylor*, 230 Mass. 303, 305. A bequest to executors "particularly for the purpose of giving to any relatives of mine who without apparent reason I may have overlooked, such sum as may seem to them or him, under all the circumstances, fitting, suitable and proper," was held void for indefiniteness notwithstanding the aid of the statute of distributions. *Minot* v. *Parker*, 189 Mass. 176. A limitation over, after the death of the testatrix's son without heirs, "to whoever has been his best friend" was held to be "too indefinite for anyone to determine who was intended as the object of the testatrix's bounty." *Early* v. *Arnold*, 119 Va. 500. Where an executor was given direction to

distribute in a manner calculated to carry out "wishes which I have expressed to him or may express to him" and such wishes had been orally communicated to the executor by the testator, the devise could not be given effect as against the next of kin. *Olliffe* v. *Wells,* 130 Mass. 221, 224, 225. Much less can effect be given to the uncommunicated wishes of the testator here.

It was the evident purpose of the testator to invest his trustees with the power after his death to make disposition of the enumerated articles among an undefined class with practically the same freedom and irresponsibility that he himself would have exercised if living; that is, to substitute for the will of the testator the will and discretion of the trustees. Such a purpose is in contravention of the policy of the statute which provides that "no will shall be effectual to pass any real or personal estate . . . unless made by a person . . . in writing, signed by the testator or by some one in his presence and by his direction, and attested and subscribed in his presence by three or more credible witnesses." P. L., *c.* 297, *s.* 2.

Where a gift is impressed with a trust ineffectively declared and incapable of taking effect because of the indefiniteness of the *cestui que trust,* the donee will hold the property in trust for the next taker under the will, or for the next of kin by way of a resulting trust. *Varrell* v. *Wendell,* 20 N. H. 431, 438; *Lyford* v. *Laconia,* 75 N. H. 220, 223; *Sheedy* v. *Roach,* 124 Mass. 472, 476; *Nichols* v. *Allen,* 130 Mass. 211, 212; *Blunt* v. *Taylor, supra; Drew* v. *Wakefield,* 54 Me. 291, 295. The trustees therefore hold title to the property enumerated in the paragraph under consideration, to be disposed of as a part of the residue, and the trustees are so advised. This conclusion makes it unnecessary to answer the question reserved, and it has not been considered.

2. The testator in the eighth clause of his will bequeathed "To each of the other of my employees at the time of my decease, excepting Sarah Rowin hereinbefore remembered, the sum of one hundred dollars for each full year of twelve months of continuous employment existing at the date of my decease up to and not exceeding in all in any one case ten years." There were three employees on the testator's farm upon his death, to wit: (1) Roscor Leavitt, who had been in the testator's continuous service seven years, nine months, three days. (2) Belle Campbell, who was in the testator's service for two separate periods, first from June 1, 1912, to June 1, 1915, to wit, for three years, and again from July 4, 1919, until the testator's death, to wit, six months, sixteen days. (3) Marie

Thompson, who served the testator from August, 1914, continuously to the time of his decease, to wit, four years, six months, five days. The plaintiffs are advised in answer to a question reserved that under the foregoing provision Belle takes nothing and the other legatees take, Roscor seven hundred dollars and Marie four hundred dollars.

3. A codicil to the will provides: "In addition to the legacies made in my said will, I give and bequeath to Marie Thompson, who is a faithful employee at my farm in said Meredith, the sum of Five Thousand Dollars. If she does not survive me then said legacy shall lapse and become a part of the residue of my estate." Marie survived the testator. The plaintiffs are advised that Marie takes said bequest in addition to the four hundred dollars bequeathed her by the eighth clause of the will.

*Case discharged.*

All concurred.