SOCIETY OF THE CINCINNATI IN THE STATE OF NEW HAMPSHIRE

*v.*

EXETER.

350

*Demond, Sulloway, Piper & Jones* (*Mr. Piper* orally), for the plaintiff.

*George R. Scammon* (by brief and orally), for the defendant.

ALLEN, C. J.  The statute (R. L., *c.* 73, *s.* 24) upon which the plaintiff relies, so far as applicable to the case, exempts from taxation the real estate of local charitable institutions owned and occupied by them for their charitable purposes, upon the condition that none of the institution's income or profits is applied for other purposes.

The main questions are whether the Society's status is that of a charitable institution, and if so, whether its real estate is occupied for its charitable purposes.  In reasonable construction of the statute, if these conditions are met, the exemption is granted.  The condition that no income or profits of the institution shall be applied except to charitable purposes, refers to income or profits derived from other sources than its real estate which it occupies for its purposes of charity.  Obviously, if the real estate is devoted to charitable uses, the income or profits from it cannot be used otherwise.

As a matter preliminary to the main question, the special features of Folsom Tavern are properly considered.  This is an old building of historic interest, given the plaintiff in 1929, moved to its land, and partially restored.  The plaintiff plans to further restore it and to place in it furnishings of the Revolutionary Period when and if funds therefor become available.  The building now has no actual use. The trial court declined to find the claimed purpose of its eventual use as "a public historical museum," on the ground that the public is entitled to no rights to such use.  But if such a purpose might be found, at best the use is prospective.  There is, and has been, none

either in aid of the final purpose or directly for that purpose. The statute contemplates occupancy as more than bare possession. Such possession is not an existing use for the owner's purposes, even with a plan and purpose of future use therefor. Clearly, if the building were rented, it would be taxable, and it is no less so while it remains indefinitely idle.

The authorities support this construction of the statute. In *St. Mary's School* v. *Concord*, 80 N. H. 436, a tract of land was held to be occupied and in some use of service towards the owner's charitable purposes. While part of the tract was unimproved, it was a single tract, the improved part was used productively, and the unimproved part was occupied as far as it was capable of occupancy. The argument is made that the Tavern is occupied as far as it is capable of occupancy at this time. It assumes incapacity by reason of the plaintiff's financial inability to an occupancy of use, whereas the test is of its inherent capacity for use. Inability to use denotes no incapacity of use.

If the tract in the *St. Mary's School* case had been wholly of wild land, it might have been treated as an investment for profit as was done in respect to timber and land, held to be occupied in furtherance of the owner's "primary objectives," in the case of *Hedding &c Ass'n* v. *Epping*, 88 N. H. 321. In both cases there was the same "actual character of use" (*Ib.*, 324). In this latter case, aside from the investment feature, there was a present use of the land in making tenancies of adjoining lands of the owner more desirable, although the tenants were not entitled to the enjoyment as a matter of right. It compares with the Society's lands which were bought for fire protection and maintenance of an open view for its main building, found to have been reasonable in amount.

In the *St. Mary's School* and *Hedding* cases, the present use may not have been a full use, but some present use was found to attach to the occupancy. They are distinguished from the more recent case of *Trustees &c Academy* v. *Exeter*, 90 N. H. 472, in which it was held (506) that a disused building of the Academy kept for future adaptation to non-taxable purposes was taxable, "not being in any present use." The Folsom Tavern stands on the same basis. When it will be in use as a historical museum is uncertain, and even a probable occupancy in some manner of charitable use in the indefinite future is not a present one such as the statute demands. The special facts affecting the Tavern nullify any possible claim that it is tax exempt.

352

The question of the plaintiff's status as a charitable institution and of the use it makes of its real estate occupied by it are in many aspects interrelated and not readily considered separately. If it is a public charity, the fact bears on the issue of its use of its real estate for purposes of public service, and, reciprocally, the use of its real estate for such service tends to denote its character as a charity.

The test of a charitable institution within the scope of the exemption statute, as stated in *Young Women's &c Association* v. *Portsmouth*, 89 N. H. 40, 43, is that it be "organized and conducted to perform some service of public good or welfare, with no pecuniary profit to its officers or members, and with no restrictions which confine benefits to them." Implied in the test, or as a corollary to it, the public service to be performed must be obligatory. It is of the essence of a privately organized public charity, termed in the law as a charitable trust, that it hold property in trust for the public benefit. ". . . in the case of a charitable trust property is devoted to purposes beneficial to the community." Restatement of the Law of Trusts, 1091. It is a "fiduciary relationship with respect to property" imposing upon the trustee "equitable duties to deal with the property for a charitable purpose." *Ib.*, 1095, and the trust is "ordinarily enforceable at the suit of a public officer" in behalf of the state. *Ib.*, 1092. ". . . the trustee of a charitable trust owes duties, . . . not owing to any person or persons in particular, although they are enforceable at the suit of a public officer for the benefit of the community". Scott, Trusts, 1917. The local law has these requisites. *Haynes* v. *Carr*, 70 N. H. 463, 484; *Petition of Burnham*, 74 N. H. 492, 494; *Clark* v. *Campbell*, 82 N. H. 281, 282; *Souhegan Bank* v. *Kenison, ante*, 117.

Examination of the plaintiff's charter shows purposes mostly confined for the benefit of its members. The only purpose expressed for the benefit of the general public is of a special range of patriotism. To maintain in the public mind the patriotic spirit of those who led the forces which won our country's independence and "to perpetuate the remembrance" of the War of the Revolution and its successful event, is an inspiration to patriotism, and patriotism is an objective within the subjects of public charity. *Sargent* v. *Cornish*, 54 N. H. 18. But construction of the plaintiff's charter leads to no conclusion of obligation on the plaintiff's part to foster patriotism among others than its members, either in the use of its property or otherwise. The charter dedicated to that purpose no property which might be acquired. The service in that respect was to be only

such as it might at its option and in its uncontrolled discretion see fit to furnish. While the service would be an exercise of charter authority, only the members of the plaintiff may say whether and to what extent it shall be exercised. No fiduciary obligation, as a charge against its real estate or in any other way, is assumed except to the members. Clearly, officers of the State acting for the public cannot enforce the service, or through suit compel the use of the plaintiff's property therefor. The public have no right to receive patriotic inspiration in performance of any obligation of the plaintiff. They have no right to visit its property, but only a permissive privilege entirely in the plaintiff's control and subject to withdrawal at its pleasure. The State may neither regulate visits nor require that visits may be made under reasonable regulations adopted by the plaintiff.

Whether the charter purpose to stimulate and maintain patriotism among the members of the plaintiff sufficiently classifies it as a charitable trust, is a question presenting a number of factors. That a trust for their benefit and for that purpose is imposed upon the plaintiff's property, may not be questioned, but its character as public rather than private is not determined by any sharply defined formula. Purposes other than those regarded as public or charitable in their bearing in predominance or importance, and the divisibility of the property of the trust in use between charitable and non-charitable purposes, call for consideration. Rules relating to them are set forth, with comments, in Restatement, Trusts, s. 398.

The Society's charter, read in the light of the extrinsic facts, discloses non-charitable purposes. The charter in express terms makes no test of membership and therefore empowers the members to determine the tests. By the Society's rules membership is primarily dependent upon the accident of ancestry. The Society is "coordinated to act as a unit" with other State Societies, under a General Society which "serves as a coordinating vehicle" to maintain general uniformity among them. "The General Society is organized for the purposes set forth in and is bound by the original Institution." By this Institution, "The officers of the American Army . . . combine themselves into one Society of friends, to endure" for themselves, their posterity, and finally in collateral branches. The element of friendship thus appears to be a pervasive and essential factor in the formation and maintenance of the Society, and the conditions and requirements of membership are designed to secure it. If not a directive of the charter, the Society's policy and scheme to maintain as-

sociations among its members who must have qualifications of special distinction is inherent, and in no wise inconsistent with, or in excess of, its charter authority. The corporate status of the local Society does not isolate it from its relations with the General Society, beyond its separate entity if it were unincorporated, and the mainte-nance .of the relations is a contractual requirement.

No prevalence of charitable over non-charitable purposes appears with any certainty. Broadly, the Society is legally comparable with social and fraternal organizations having among their purposes that of benefit to their members regarded as charitable, using the word in its popular sense. The claim of a public standing cannot be main-tained, except with reference to property held exclusively or pri-marily for charitable purposes, for organizations such as the Masonic bodies, Odd Fellows, Knights of Columbus and Elks, even with their important branches of mutual aid and relief, such as a college frater-nity with a purpose among others of educational and cultural im-provement, or even such as a country club having as one of its ob-jectives the promotion of membership, health and recreation, similar to that of a public park or playground as a gathering place for such purposes. In these cases the element of privacy is too controlling to give the State authority to enforce a member's charitable rights. The rights are contractual and no trust in favor of the public is created. Internal control and management is exclusive, and only by private litigation may there be redress for wrong.

The exception has been noted of a public trust imposed upon the property of a non-charitable institution held for the charitable bene-fit of its members. The exception seems unfortunate and unneces-sary. It arose as a justified escape from the rigor of the common-law rule that a private trust is void without a definite beneficiary. The rule being otherwise as to charitable trusts, trusts private in nature have been held to be public charities, on the ground that the uncer-tain beneficiaries form "a definite section of the public" (*Roberts* v. *Corson*, 79 N. H. 215, ·216).

In *Goodale* v. *Mooney*, 60 N. H. 528, a legacy for the testator's needy "relatives," construed as next of kin, to be distributed among them as the executors thought "for the best," was held valid, on the theory of the grant of a power to the executors, although the bene-ficiaries were uncertain. The court was careful to distinguish the legacy from one for charitable objects. But in *Gafney* v. *Kenison*, 64 N. H. 354, a similar legacy was held to be a charitable trust, al-though the court conceded that the common-law rule invalidating

private gifts to uncertain beneficiaries was no longer here in force. As the opinion reads (356): "But at the present day the mere uncertainty of the persons, until they are ascertained, is no ground for avoiding the will. . . . Courts are now quite uniformly reluctant to· admit uncertainty as a ground for avoiding the formal disposition of property."

In a trustee's authorized exercise of discretion to determine needs of named beneficiaries, or unnamed ones, within a family group, and to apply the trust property pursuant to the determination, a public interest is declaratory rather than actual. No case except that of *Gafney* v. *Kenison* is found which holds that the trust in such a case is charitable. To impress the trust with public relations is contrary to general legal policy and to actual practice. And to draw the line between trusts for groups of family or personal formation and those of groups giving only membership aid and having additional objects of association seems arbitrary and undesirable. The donor's benevolence must be bestowed upon persons entitled, who would in general view be regarded, as forming a body of the public. The public membership that every individual has is not enough, and a collection of individuals does not of itself set them off as a part of the public.

The need of a definite beneficiary in a private trust is supplied if a method of selection is provided by the trust instrument which in final outcome will result in his ascertainment. The rule of executory devises saves the trust from objection as bestowing contingent interests, and the equitable reasons for the rule make it equally applicable to a trust established by its creator in his lifetime. It should make no difference whether a trust for the benefit of the donor's oldest grandchild living at the decease of all of the donor's children is created by will or otherwise. Actually there is a contingency which the strategy of the law, in good policy, treats as vested. The beneficiary is in fact indefinite until the time for selection comes, but he is regarded as potentially or "defeasibly" definite meanwhile.

A private trust for a definite person is invalid only when no legal method exists for ultimate ascertainment. Uncertainty of a definite person's rights to benefit from the trust and uncertainty who the beneficiaries may be are of equitable equality. In the former uncertainty, validity of the trust does not fail if the uncertainty may eventually become transformed into certainty, and in parallel the same rule governs cases of beneficiaries prospectively definite although not presently so. Failure of conditions may lead to failure of the trust, but the trust does not lapse because of inherent invalid-

ity.   It is said in *Clark* v. *Campbell*, 82 N. H. 281, 282: "There must be a beneficiary or a class of beneficiaries indicated in the will capable of . . . claiming the benefit of the bequest." The statement implies no requirement of immediate ascertainment.

From the standpoint of the public interest, it is true that the indefinite beneficiaries of a public charity may be within a limited class or group, with the result that they have been held to become entitled to rights because they are members of the public. But a section of the public so segregated and so specialized that benefits to its members are essentially private in nature seems public only by strained reasoning. The public interest, though confined to few in numbers, ought not only to be an interest of a public nature, but it also ought to be a matter of public concern because of an actual public benefit. If a trust is charitable, the Attorney-General may enforce it. It should not be his duty, nor even his right, to appear in legal proceedings for a claimant for relief in a trust of a private nature. The assumption of governmental participation or interference is undue. Any claimant may seek relief in his own name, whether he be a destitute relative of the donor (*Goodale* v. *Mooney; Gafney* v. *Kenison, supra*), or a member of a Masonic order holding a fund for the relief of needy members (*Roberts* v. *Corson, supra*). If the trusts in these cases are charitable, then in consistency a group of two persons entitled to benefits of benevolence under a trust would form a public class. Groups formed by close ties of blood or association are not properly to be regarded as such when the benefits of a trust are limited to them. The public interest in the right of needy members of the Society to be aided and relieved is difficult to find. Fairly, in common understanding, the members constitute no defined section of the public, but are regarded as a private group with no public interest attaching.

But if, in observance of the authority of precedents, the reasoning in *Roberts* v. *Corson* is to be accepted, the conclusion that the trustee thereby becomes a charitable institution does not demand adoption. A group of persons selecting their membership and combining in self-interest for their own betterment lacks the altruistic spirit inherent in a legal charity. The members serve themselves mutually, but not others. If there may be additions in broadening the definition of a charitable institution that it is one dispensing public charity as its sole or primary engagement, the Society does not qualify.

On another ground, the Society is not a charitable institution within the meaning of the exemption statute. After the general

reference to the property of "institutions devoted to educational purposes, charitable and religious societies, and . . . temperance societies," the statute specially adds certain organizations, well known to be constituted for objects of patriotism and of benevolence among their members. The intent not to classify them as charitable societies is apparent, and the omission of the plaintiff in the list, although it has like objects, evidences the legislative purpose to exclude it from the benefit of the statute as well as other similar ones not named. Although the specified organizations may be national, — some of them have local branches, similar to the Society's relation in its coördination with that of the General Society, and these branches are separate legal entities. The statute does not undertake to differentiate between the national organizations and their local branches.

In the aspect of the case from the statutory condition that a charitable institution's real estate must be occupied by it for its purposes of charity, the Society, even as such an institution, does not meet the condition. As already has appeared, its use of its real estate for patriotic purposes, being non-obligatory to the public, imposes no public trust on it. And the obligation to aid needy members, if held to be a charitable trust, is not one affecting its use of its real estate. The aid is furnished from the Society's funds, and its real estate is not occupied in any real manner of use in extending the aid. The suggestion is made that the fact that aid of over a certain amount in a case must be approved by the Society's standing committee which meets three times each year in its main building shows some use of the real estate in dispensing the aid. No finding of occupancy for the purpose has been made and, if it were a fact, it would be by itself too slight and insignificant to constitute an occupancy sufficient to warrant a conclusion of use for the Society's purposes, such as the statute requires. The use must be more than trivial and negligible to give reasonable effect to the demand of the statute. The suggestion is unacceptable.

When and not until property becomes devoted to use for the benefit of the public, or some class of persons who may be reasonably regarded as a part of the public, does a charitable trust exist. If there is some trust of public service it must be assignable predominantly, or in ascertainable proportions, to definite property, to subject it to public enforcement. The need of specific, or at least determinable, property or funds held in trust for charity must appear. *Clark* v. *Cummings*, 83 N. H. 27, 28.

In summary, the plaintiff's charter shows no purpose that its real estate shall be devoted to charitable uses, the plaintiff is not a charitable institution, within the meaning of the statute exempting its real estate from taxation, and its real estate is not owned and occupied for purposes of a public charity.

*Case discharged.*

All concurred.