Carroll
No. 92-762

# Wolfeboro Camp School, Inc.

v.

# Town of Wolfeboro

May 24, 1994

*Walker & Varney*, of Wolfeboro, and *Elizabeth Cazden*, of Manchester (*Robert C. Varney* and *Ms. Cazden* on the brief, and *Mr. Varney* orally), for the plaintiff.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the defendant.

BROCK, C.J.   The plaintiff, Wolfeboro Camp School, Inc. (camp school), sought an abatement of real property taxes from the Town of Wolfeboro (town), alleging that it was entitled to an exemption as a school under RSA 72:23, IV (1991). The town denied the abatement and the camp school appealed. After a three-day trial, the Superior Court (*Mohl*, J.) granted a limited abatement.

On appeal before this court, the town argues that the trial court erred in ruling: (1) that the camp school is a school within the meaning of the exemption statute; (2) that even if the property is not fully taxable, the trial court should have allocated the property between taxable "camp" property and exempt "school" property; (3) that certain vacant and unimproved land designated by the camp school for future faculty housing is exempt from taxation; and (4) that other taxable land of the camp school should be valued at $1,500 per acre. We affirm in part and reverse in part.

The camp school is a nonprofit corporation formed in 1977 "exclusively for educational purposes, including the organization and operation of a summer school and related activities." Its articles of agreement require that upon dissolution its assets be distributed to a nonprofit organization established for similar purposes. The camp school's property consists of approximately 45.7 acres of land with frontage on Rust Pond in Wolfeboro. Seventeen acres contain nineteen buildings, ninety-seven tent sites, and a variety of recreational facilities. The trial court held this property to be tax exempt. The remaining 28.5 acres consist of vacant, unimproved land, of which 4.4 acres has been designated by the camp school as the future site of faculty housing. The trial court ruled that the 4.4-acre parcel is tax exempt and that the remaining acreage is taxable.

The camp school program operates for seven weeks each summer. Approximately 200 children between the ages of twelve and eighteen attend, of whom the majority are boarders. The camp school employs over thirty faculty members, drawn mainly from a number of recognized independent schools, the majority of whom reside on the camp school grounds while the program is in session. Faculty members preside at meals, and supervise, tutor, coach, and otherwise assist the children as needed.

The program offers courses of instruction in subjects including reading, writing, vocabulary, Latin, French, Spanish, English, United States and European history, mathematics, algebra, geometry, pre-calculus, biology, and chemistry. Classes meet for five fifty-minute periods a day, six days a week. Children are required to take three academic subjects and must attend supervised study periods for two hours, five evenings per week. Children are tested regularly, grades and written reports are given weekly, and final academic reports are forwarded to each child's parents and to the school the child attends during the academic year. Some children earn credit toward their high school diploma; whether credit is given is within the discretion of the child's secondary school.

The program also includes a variety of recreational activities. For two hours on weekday afternoons, children participate in such sports as volleyball, baseball, basketball, tennis, and swimming. Approximately once a week, the camp school has voluntary athletic matches against local camps. In addition, children fourteen years of age or younger are required to participate in a "water, land and mountains program" that includes training in such areas as basic boating, water safety, and camping, culminating in one weekend camping trip in the White Mountains. Children ages fifteen and sixteen must attend one one-night camping trip during the summer.

The town first argues that the trial court erred as a matter of law in ruling that the camp school is a "school" within the meaning of RSA 72:23, IV. The statute provides:

> "The following real estate and personal property shall, unless otherwise provided by statute, be exempt from taxation:
>
> . . .
>
> IV. The buildings and structures of schools, seminaries of learning, colleges, academies and universities organized or incorporated or carrying on their principal activities in this state and owned, used and occupied by them for the purposes for which they are established . . . and the land thereto

appertaining but not including lands and buildings not used and occupied directly for the purposes for which they are organized or incorporated . . . ."

The town argues that the statutory exemption is available only to institutions that qualify as schools within the meaning of New Hampshire's education statutes and regulations and that are approved by the department of education. *See* RSA ch. 189 (1989 & Supp. 1993); N.H. ADMIN. RULES, Ed 306. Because the camp school's program does not, among other things, contain a sequence of courses, lead to a diploma, or operate for 180 days each year, the town contends that it cannot satisfy the laws governing schools and, therefore, is not entitled to a tax exemption as a school.

■ A tax exemption statute is construed not with rigorous strictness but "to give full effect to the legislative intent of the statute," and, absent formal legislative history, intent must be gleaned from the plain language of the statute. *In re Estate of Martin*, 125 N.H. 690, 691, 484 A.2d 1183, 1184 (1984) (quotation omitted). Prior to 1957, the statute authorized a tax exemption to "institutions devoted to educational purposes" provided that "[n]o institution shall be deemed an educational institution for the purpose hereof unless it conducts regular courses of instruction, under a curriculum approved by the state board of education, for at least six months of each calendar year." Laws 1955, ch. 157. These limitations were repealed when the statute was amended in 1957. *See* Laws 1957, 202:2. Legislative history of the 1957 revision is scant.

The town argues that since 1957 the term "school" has had a specific meaning in the New Hampshire education statutes and if the legislature meant the term "school" in the tax exemption statute to mean something different, it would have made its intent clear. The language used in RSA 72:23, IV, however, does not manifest the intent to restrict the operation of the statute so as to include only those schools established in compliance with the compulsory school attendance laws. The fact that the 1957 amendment eliminated the specific restrictions for qualifying educational institutions undermines the town's position.

■ The construction of a bright-line test for determining what constitutes an educational institution under the statute is impossible. *New Canaan Academy v. Town of Canaan*, 122 N.H. 134, 137, 441 A.2d 1174, 1176 (1982). "[E]ach case will necessarily depend on its own peculiar facts," aided by reference to four general guidelines: (1) whether the institution's purposes are "educational—i.e., intended to

develop the faculties and powers and the expansion of knowledge through a systematic course of instruction or schooling as distinguished from the mere communication of facts or ideas"; (2) whether the land and buildings in question are "used and occupied directly" for these educational purposes; (3) whether none of its income or profits may be divided among its members or owners or used or appropriated for any purposes other than its educational purpose, RSA 72:23, IV; and (4) how closely the instruction provided compares to "traditional educational methods and objectives." *New Canaan Academy*, 122 N.H. at 137, 441 A.2d at 1176 (quotation omitted).

The town does not seriously contest that the camp school's purposes are, at least in part, educational. In addition, the town concedes that "the subject matter of the various courses taught at the camp school is substantially similar to the subject matter of the courses taught by the 'government' (i.e., by public high schools in New Hampshire)." The town argues, however, that because the camp school's basic methods and objectives diverge "greatly" from those of the government's schools, it fails to meet the fourth *New Canaan* guideline. In addition, the town contends that because the program consists of both educational and recreational activities, the land ought to be apportioned between the "school" and the "camp." The implication from these arguments is that the camp school also fails the second and third *New Canaan* guidelines.

■■ The camp school offers an intensive academic program designed to prepare students for work at a secondary school, to fulfill course credit at a secondary school, or to make up courses failed during the academic year. Standard textbooks are used, the instructors are qualified teachers, and the course of study fits into a scheme of traditional education including branches of instruction usually included in the academic course of secondary schools in New Hampshire, both public and independent. *See Warde v. Manchester*, 56 N.H. 508 (1876); *cf. New Canaan Academy*, 122 N.H. at 136, 441 A.2d at 1175 ("school" for instruction in sitting meditation, Tai Chi, and Zen Basketball not entitled to exemption). As we stated in *New Canaan*, "it is not necessary that the training be of the type that would otherwise be furnished by the government." 122 N.H. at 137, 441 A.2d at 1176. The record amply supports the trial court's ruling that "[t]he clear weight of the evidence shows [the camp school] to be a 'school' within the meaning of RSA 72:23, IV."

■ We likewise reject the town's argument that because the camp school has attributes common to a summer camp, *e.g.*, the chil-

dren live in tents and participate in recreational activities, the camp school's property should be apportioned between "camp" property and "school" property. The statute does not require that a school's property be used exclusively for educational purposes, so long as it is used directly by the school for those purposes. *See St. Paul's School v. City of Concord*, 117 N.H. 243, 249–50, 372 A.2d 269, 273–74 (1977); *Appalachian Mountain Club v. Meredith*, 103 N.H. 5, 15, 163 A.2d 808, 814 (1960). In an academic year boarding school program, recreational programs are considered an integral part of the educational program and do not affect the school's tax exemption. *See Duffley v. N.H. Interschol. Ath. Assoc., Inc.*, 122 N.H. 484, 492, 446 A.2d 462, 467 (1982); *St. Paul's School*, 117 N.H. at 257–58, 372 A.2d at 278; *cf. Christian Camps & Conferences v. Town of Alton*, 118 N.H. 351, 388 A.2d 187 (1978) (religious activity slight and subordinate relative to camping activity). We agree with the trial court that the camp school "operates a fully integrated academic program whose fundamental aims are educational. The fact that students are housed in canvas tents and follow their academic schedule in an outdoor atmosphere is immaterial . . . . It is the *use* of the facilities not their physical appearance that is determinative of their status for tax purposes."

■ The town next argues that the trial court erred by exempting from taxation 4.4 acres of vacant, unimproved land designated by the camp school as the future site of faculty housing. To qualify for the exemption under RSA 72:23, IV, land must be "used and occupied" by the exempt entity "directly for the purposes for which [it is] organized or incorporated." RSA 72:23, IV. The camp school admits that "a parcel of approximately 4.4 acres . . . is presently essentially vacant but is in [the] process of being developed for future faculty housing." It notes that definite plans have been made to construct faculty housing, it has incurred expenses in conducting soil tests, surveying, and other pre-construction planning, and the only reason the plans are on hold is this litigation. The camp school contends that these facts establish a "use" of the property sufficient to qualify for an exemption.

■ This court has rejected similar arguments in cases decided under prior versions of the statute that contained a less restrictive standard. For example, in *Trustees of Phillips Exeter Academy v. Exeter*, 90 N.H. 472, 27 A.2d 569 (1940), the exemption statute required that land be "owned and occupied" by the institution in order to qualify. *Id.* at 503, 27 A.2d at 590–91. We held that a "disused" building that the school planned to convert into a student grill room,

auditorium, and publication plant, was wholly taxable as not then being put to any use. We also held that unimproved lots having no present use were taxable. *Id.* at 506, 27 A.2d at 592. Likewise, in *Society of the Cincinnati in the State of New Hampshire v. Exeter,* 92 N.H. 348, 350–51, 31 A.2d 52, 54 (1943), we held that despite the fact that a charitable organization had a plan and purpose of future use for an old building, the fact that the building at that time had no actual use rendered it taxable. "[E]ven a probable occupancy in some manner of charitable use in the indefinite future is not a present one such as the statute demands." *Id.* at 351, 31 A.2d at 55.

The cases cited by the camp school in support of its position are not persuasive. *See Christian Science Pleasant View Home v. City of Concord,* 117 N.H. 239, 241–42, 372 A.2d 267, 268–69 (1977) (special legislation allowed home for aged to qualify for tax exemption while home was vacant and for sale); *St. Mary's School v. Concord,* 80 N.H. 436, 439, 118 A. 608, 609 (1922) (land held for future purpose of erecting a school was currently being cultivated for use by the school thereby constituting a sufficient occupation of the land). We hold that the 4.4 acres of land designated as the future site of faculty housing is not exempt from taxation under RSA 72:23, IV. It does not meet the statutory requirements that the land not only be occupied by the exempt institution, but also that it be used directly for educational purposes. Accordingly, the trial court's decision exempting that land is reversed.

■ Finally, the town argues that the trial court erred by finding that approximately 24.2 acres of vacant back land should be valued at $1,500 per acre. The town contends that the parties "stipulated and agreed to the accuracy of the Town's assessments," and that that assessment actually was $2,104.88 per acre. The record does not support a determination that the parties either stipulated or agreed to the value of the vacant back land.

The parties apparently did not dispute that if none of the camp school's property qualified for an exemption, the proper assessment for tax purposes would be $1,638,100. It does not follow, however, that the camp school thereby stipulated to the value of the components of that total. Indeed, the record indicates that the valuation of the vacant back land was in dispute. The trial court was presented with conflicting testimony on the issue and found "the vacant back land to be valued at $1500.00 per acre." Because this factual finding

is supported by the evidence, we will not disturb it. *See Guaraldi v. Trans-Lease Group*, 136 N.H. 457, 461, 617 A.2d 648, 650 (1992).

*Affirmed in part;*
*reversed in part.*

All concurred.