Cheshire
No. 99-421

EAST COAST CONFERENCE OF THE EVANGELICAL COVENANT
CHURCH OF AMERICA, INC.

v.

TOWN OF SWANZEY

July 26, 2001

*Orr & Reno, P.A.*, of Concord (*Richard B. Couser & a.* on the brief, and *Mr. Couser* orally), for the plaintiff.

*Bradley, Burnett & Kinyon, P.A.*, of Keene (*Gary J. Kinyon* on the brief and orally), for the defendant.

*Elizabeth Cazden*, of Manchester, by brief for the New Hampshire Council of Churches *& a.*, as *amici curiae*.

*Kevin P. Chisholm*, of Concord, by brief for New Hampshire Municipal Association, as *amicus curiae*.

*Jonathan A. Ruybalid, P.C.*, of Purcellville, Virginia, and *Devine, Millimet & Branch, P.A.*, of Manchester (*Ovide M. Lamontagne* and *Jonathan A. Ruybalid* on the brief), for Christian Camp and Conference Association International, as *amicus curiae*.

*Tower, Crocker & Mullins, P.A.*, of Jaffrey (*Jeffrey R. Crocker* on the brief), for the Town of Chesterfield, as *amicus curiae*.

NADEAU, J. The plaintiff, East Coast Conference of the Evangelical Covenant Church of America, Inc. (Church), appeals the ruling of the Superior Court (*Arnold*, J.) denying, in part, the Church's petition for tax abatement because certain portions of its property did not qualify for the charitable organization tax exemption for tax years 1996, 1997 and 1998. The defendant is the Town of Swanzey (town). We affirm.

The record establishes the following facts. The Church is a denomination of the Christian faith, registered with the New Hampshire Secretary of State under RSA 292:1, I (1999) as a not-for-profit corporation. The Church is designated a tax-exempt organization under section 501(c)(3) of the United States Internal Revenue Code. The Church owns and operates two properties on the shores of Swanzey Lake in the Town of Swanzey. The first property, Camp Squanto, is exempt under RSA 72:23, V (Supp. 2000), and is not at issue in this appeal.

Separated from Camp Squanto by two independently owned tracts of land is the plaintiff's second property, Pilgrim Pines. Pilgrim Pines includes lodging, dining, chapel, maintenance, meeting and recreational facilities for a family camp and conference center operated thereupon. The lodging at Pilgrim Pines includes "condominium-type townhouse units with kitchens" and free standing cabins both on and off the lake. There are campsite areas that accommodate up to 100 trailers or recreational vehicles, with water supply hook-ups and bathroom facilities for all sites, and electricity for one half of the sites. There is also a dining hall, where meals are prepared and served to guests, and recreational amenities including tennis courts, a golf course, a basketball court, a swimming beach, boating and fishing access and cross country skiing trails. Finally, Pilgrim Pines includes staff quarters, maintenance buildings, a

preschool, administrative office space and tracts of undeveloped land.

Pilgrim Pines' functions can be divided into two main categories. First, during the summer months (eight to ten weeks per year), Pilgrim Pines is host to weeklong "camp programs" for families and adults. These programs have Christian-based themes and are run by pastors of the Church's national clergy. The programs include worship services, Bible study groups and recreation opportunities when the programs are not in session. Guests are informed that they are expected to participate in the programs during their stay at Pilgrim Pines. Guest registration check-in forms require indication of church affiliation, and approximately sixty percent of guests are members of the Church.

During non-summer months, Pilgrim Pines is rented to Church-approved groups. A chief renter is Elderhostel (accounting for approximately six percent of the Church's overnight guests). This program is led by Church organizers, and includes programs focusing on Israel, the Holocaust and literary themes in the Bible. Other denominations, including Lutherans, Congregationalists, Baptists and Episcopalians, have also rented the facilities. Finally, non-religious affiliates, such as the Swanzey Fire Department, Keene State College and Cheshire Medical Center, rent Pilgrim Pines' facilities.

In 1996, the town taxed virtually all of the Church's property, except the chapel. Following the Church's abatement request, the town exempted the preschool, dining, kitchen and administrative facilities, bathhouse, barn, workshop, meeting hall and the chapel at Pilgrim Pines. The town, however, also revalued the Church's property at that time, resulting in higher tax bills for the subsequent two years in question. The Church filed a petition in the superior court seeking an abatement of all property taxes assessed by the town for the tax years 1996, 1997 and 1998.

For each of the tax years at issue here, the Church filed a board of tax and land appeals A-9 form, pursuant to RSA 72:23-c (Supp. 2000). For 1997 and 1998, the Church's A-9 form requested a charitable exemption, though attached letters requested that "[i]n the event that [the] charitable exemption is denied, we would request an exemption under RSA 72:23 III (religious)." For 1996 the Church sought only the religious exemption. Nevertheless, the trial court determined, as an uncontested fact, that "this was the result of a clerical error and the Church intended to request a charitable exemption." Thus, the trial court first considered the Church's request under the charitable exemption statute and concluded that,

in its operation of Pilgrim Pines, the Church was not a charitable organization. The trial court then granted an exemption under RSA 72:23, III (Supp. 2000) for only the Pilgrim Pines chapel and those properties related to the chapel. The Church appealed.

"It is elemental that determination of the rights of plaintiff to an exemption from taxation is statutory. The existence and extent of exemptions depends on legislative edict." *Christian Camps & Conferences v. Town of Alton*, 118 N.H. 351, 353 (1978). "The interpretation of a statute is to be decided ultimately by this court. Therefore, if we find that the [superior court] misapprehended or misapplied the law, its order will be set aside." *Appeal of Kiwanis Club of Hudson*, 140 N.H. 92, 94 (1995) (quotation and citation omitted).

RSA 72:23, entitled Real Estate and Personal Property Tax Exemption, provides:

> The following real estate and personal property shall, unless otherwise provided by statute, be exempt from taxation:
>
> . . . .
>
> V. The buildings, lands and personal property of charitable organizations and societies organized, incorporated, or legally doing business in this state, owned, used and occupied by them directly for the purposes for which they are established, provided that none of the income or profits thereof is used for any other purpose than the purpose for which they are established.

RSA 72:23-l (Supp. 2000), defining "charitable," provides, in pertinent part:

> a corporation, society or organization established and administered for the purpose of performing, and obligated, by its charter or otherwise, to perform some service of public good or welfare advancing the spiritual, physical, intellectual, social or economic well-being *of the general public or a substantial and indefinite segment of the general public* that includes residents of the state of New Hampshire, with no pecuniary profit or benefit to its officers or members, or any restrictions which confine its benefits or services to such officers or members, or those of any related organization.

(Emphasis added.)

The trial court ruled that for the years in question, the facilities at issue should not be entitled to a charitable exemption because the church failed to offer their use to an indefinite number of the public. We agree.

■ A taxpayer seeking exemption under RSA 72:23, V bears the burden of proving that it is obligated to be "a public charity, that is, that the general public, or a substantial portion of it, were the beneficiaries of [its] uses." *Nature Conservancy v. Nelson*, 107 N.H. 316, 319 (1966). "It cannot be considered a charitable organization if its purposes are confined mostly to benefiting its own members." *Id.; see also Society of Cincinnati v. Exeter*, 92 N.H. 348, 352-54 (1943) (interpreting prior statute). "The test of the public character of a charitable institution is not that all of the public is admitted to its benefits, but that an indefinite number of the public are so admitted, that its benefits are not restricted to its corporate members." *Sisters of Mercy v. Hooksett*, 93 N.H. 301, 309 (1945) (interpreting prior statute).

■ ■ More recently, we noted that "the purpose of the 'obligation' requirement is to prevent purely private organizations, albeit with charitable purposes, from benefiting by a tax exemption without, in turn, providing some service of public good." *Appeal of City of Franklin*, 137 N.H. 622, 626 (1993). In determining if an organization satisfies the "obligation" requirement, we look to both its charter or organizational statements and its actions taken pursuant to those statements. *See id.*

■ Based upon our review of the factual record, we hold that the Church failed to prove that the beneficiaries of Pilgrim Pines were a substantial and indefinite segment of the general public for the tax years at issue.

According to the Chuch, our holding in *Christian Camps & Conferences* stands for the proposition that properties where programs are specifically oriented to people of a certain religion are properly exempted under RSA 72:23, V. We disagree. In that case, we upheld the trial court's conclusion that a corporation owning and operating two summer camps "oriented toward an understanding of the tenets of the Christian religion, in addition providing all of the programs of the better summer camps for young people" was a charitable organization. *Christian Camps & Conferences*, 118 N.H. at 353, 355. The case does not address the specific degree to which the organization served the general public or a substantial and indefinite segment of the general public. Accordingly, we affirm the

decision of the trial court that the Church's operation at Pilgrim Pines is not eligible for a charitable tax exemption.

After concluding that the Pilgrim Pines property was not eligible for a charitable tax exemption, the trial court considered whether the property was eligible for the religious exemption. *Cf. Appeal of C.H.R.I.S.T., Inc.*, 122 N.H. 982, 983-84 (1982) (noting that when the taxpayer has been *granted* tax-exemption status as a charitable organization it is unnecessary to consider the taxpayer's request under the religious exemption). The trial court concluded that the Pilgrim Pines chapel was exempt pursuant to the religious exemption provision. The trial court further ruled: "Those portions of the administrative offices, maintenance center, barn and workshop that are reasonably related to the function of the Chapel and/or Camp Squanto are exempt."

In determining if the remaining property was eligible for the religious exemption, the trial court looked to our decision in *Alton Bay Camp Meeting Association v. Alton*, 109 N.H. 44, 48 (1968). There we reasoned that in order for property to be exempt under RSA 72:23, III, the land must be directly used for religious purposes. *Id.* at 48. Applying this rule, we held that a rooming building, dining hall and snack shop reserved for people attending the religious services of the taxpayer were not exempt because they were not specially adapted to religious uses or purposes nor was the property so used. *Id.* at 50-51. Analogizing the campgrounds and other recreational facilities in this case to the properties in *Alton Bay*, the trial court denied tax-exempt status.

■ The Church urges this court to reconsider our holding in *Alton Bay*. The rule in *Alton Bay* derives directly from the words of RSA 72:23, III. Examining the legislative history of the statute, we discover there have been no significant changes in its wording since our ruling in *Alton Bay*. In 1994, RSA 72:23, III was amended from exempting "buildings used principally for religious training or for other religious purposes, and the lands thereto appertaining owned and occupied by [a religious organization]" to exempting "buildings and the lands appertaining to them owned, used and occupied directly for religious training or for other religious purposes." This language merely clarifies that land owned by religious organizations must be "used and occupied directly" for religious purposes. *Accord* N.H.H.R. JOUR. 579-80 (1994). As the legislature has indicated no intention to change the rule announced in *Alton Bay* and permit support facilities for religious organizations to receive tax-exemption, we decline to change that rule. *See Del Norte, Inc. v. Provencher*, 142 N.H. 535, 539 (1997).

■ There were no factual findings to indicate that the properties at issue in this case — that is, the "condominium-type townhouse units with kitchens," free standing cabins on the lake, campsite areas with water supply hook-ups, bathroom facilities, dining hall, and other recreational amenities — are more adapted for religious purposes than the properties in *Alton Bay*, and thus we hold that the superior court properly denied tax-exemption.

In light of our holdings, the Church's request for attorney's fees is moot. We decline, however, to find the Church's request for attorney's fees an "extraordinary" request or one made in "bad faith" as defined in Supreme Court Rule 23, and therefore deny the town's limited request for attorney's fees.

*Affirmed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.