Board of Tax and Land Appeals
Nos. 2002-178
    2002-179

APPEAL OF TAYLOR HOME
(New Hampshire Board of Tax and Land Appeals)

Submitted: November 21, 2002; December 16, 2002
Opinion Issued: January 27, 2003

*Devine, Millimet & Branch, P.A.*, of Manchester (*George R. Moore* and *Daniel E. Will* on the briefs), for the petitioner.

*Gardner & Fulton, P.L.L.C.*, of Lebanon (*Adele M. Fulton* on the brief), for respondent City of Laconia.

*Mitchell & Bates, P.A.* of Laconia (*Walter L. Mitchell* on the brief), for respondent Town of Sandwich.

NADEAU, J. The petitioner, the Taylor Home, appeals decisions by the New Hampshire Board of Tax and Land Appeals (BTLA) denying as untimely its appeals of the denials of charitable tax exemptions by the City of Laconia (Laconia) and the Town of Sandwich (Sandwich). We have consolidated these cases for decision. We affirm.

The record reveals the following facts. On August 31, 2001, the petitioner filed with the BTLA two documents entitled, "Petition for Abatement of Real Estate Taxes." One document pertained to Laconia's refusal to abate the petitioner's real estate taxes for the 2000 tax year; the other document pertained to Sandwich's refusal to abate the petitioner's 2000 tax year taxes. Each petition asserted that it was filed "pursuant to Chapter 76, Section 16-a of the Revised Statutes Annotated." Each petition alleged that the valuations used by the municipalities failed "to properly assess the true fair market value of the premises based upon its condition, location, charitable status, encumbrances and particular circumstances." Each petition alleged that, as a result of the faulty valuations, the petitioner's property had been "assessed at a value far in

excess of its true market value and ha[d] been treated disproportionately to other similar properties," thus entitling the petitioner to an abatement.

Each document was accompanied by a form entitled, "RSA 76:16-a PROPERTY-TAX APPEAL TO BOARD OF TAX AND LAND APPEALS." In section F of the form, which asked the petitioner to state the reasons for its appeal, the petitioner stated as follows:

> Please see the taxpayers [sic] Petition attached hereto and incorporated herein as if fully set forth. The property is encumbered by life care contracts, other charitable obligations and governmental controls which impact the marketability and value of the property. The taxpayer asserts that the municipality has erroneously assessed this property. The Taylor Home is a non-profit, charitable organization providing elderly housing and resources for the senior population in the lakes region. The taxpayer reserves the right to rely upon legal arguments and legal data submitted in connection with its prior appeals and companion appeals against [the municipality].

In section G of the form, which asked the petitioner to state the market value of its property, the petitioner stated, "n/a tax exempt."

On October 31, 2001, the petitioner moved to reform its August 31, 2001 petitions to state that it also appealed the failure of the municipalities to grant charitable tax exemptions for the 2000 tax year. The BTLA denied the petitioner leave to reform its petitions and its subsequent motions for rehearing. This appeal followed.

To prevail on its appeal, the petitioner must show that the BTLA's decisions were "clearly unreasonable or unlawful." RSA 541:13 (1997); see RSA 71-B:12 (1991). The BTLA's factual findings are deemed prima facie lawful and reasonable. RSA 541:13.

The petitioner argues that it timely appealed the failure of the municipalities to grant charitable tax exemptions for the 2000 tax year. The petitioner concedes that RSA 72:34-a (Supp. 2002) required it to file these appeals by September 1, 2001, but contends that its August 31, 2001 petitions *were* appeals of the failure of the municipalities to grant charitable tax exemptions. We disagree.

"Our task is not to determine whether we would have found differently than did the board, or to re-weigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." *Appeal of Land Acquisition*, 145 N.H. 492, 496 (2000) (quotation omitted).

■ There is competent evidence in the record to support the BTLA's finding that the August 31, 2001 petitions appealed the municipal

abatement decisions, not the municipal charitable exemption decisions. The forms accompanying each petition were entitled, "RSA 76:16-a PROPERTY-TAX APPEAL TO BOARD OF TAX AND LAND APPEALS." On each form, the petitioner stated that the reason for the appeal was that the respective municipality had "erroneously assessed this property" in light of the encumbrances on the property "which impact the marketability and value of the property." In the petitions themselves, the petitioner stated that it sought "an abatement of real estate taxes" assessed by the respective municipality because the municipality had failed to assess the property's true fair market value.

Although the petitions referred to the petitioner as a "non-profit, charitable organization" and stated that its market value was "n/a tax exempt," the petitions did not state that the petitioner had been denied a charitable exemption. Nor did the petitions state the grounds for appealing the denial of an exemption. The only reference to an appeal of the denial of a charitable exemption was the following: "The Petition [*sic*] has filed, by separate appeal to the BTLA, a claim for exemption of real estate taxes on this property for 2000 and . . . prior exemption appeals are pending before the BTLA for the years 1997 through 2000."

Given this evidence, we hold that it was reasonable for the BTLA to treat the August 31, 2001 petitions as appeals of the municipalities' failure to abate taxes, rather than as appeals of the municipalities' failure to grant charitable tax exemptions.

The petitioner argues that by treating the August 31, 2001 petitions as appeals of the abatement decisions, the BTLA violated its own procedural rules. The petitioner asserts that the BTLA should have treated the August 31, 2001 petitions as non-conforming documents and, pursuant to New Hampshire Administrative Rules, Tax 201.17 (Rule 201.17), should have returned them and given the petitioner time to file conforming documents.

■ We agree with the BTLA that Rule 201.17 does not apply to the August 31, 2001 petitions. Rule 201.17 applies only to documents that do not comply "with any statute or board rule." N.H. ADMIN. RULES, Tax 201.17. It is undisputed that the petitions complied with the statutes and rules governing abatement appeals. Thus, they were not "non-conforming" documents under Rule 201.17.

The petitioner next asserts that the August 31, 2001 petitions complied with the statute governing appeals of exemption decisions, and, thus, as a matter of law, the BTLA should have considered them to be appeals of the municipalities' failure to grant the petitioner charitable exemptions.

"On questions of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. When a statute's language is plain and unambiguous, we need not look beyond the statute for further indication of legislative intent." *Appeal of Meunier*, 147 N.H. 546, 548 (2002) (citations omitted). "[W]e interpret statutes in the context of the overall statutory scheme and not in isolation." *Appeal of Brady*, 145 N.H. 308, 310 (2000) (quotation omitted).

RSA 72:34-a (Supp. 2002) provides, in relevant part:

> Whenever the selectmen or assessors refuse to grant an applicant an exemption . . . to which the applicant may be entitled under the provisions of RSA 72:23 . . . the applicant may appeal in writing, on or before September 1 following the date of notice of tax under RSA 72:1-d, to the board of tax and land appeals or the superior court . . . .

The petitioner asserts that because its petitions were "in writing" and were filed with the BTLA before September 1, 2001, they complied with RSA 72:34-a. This argument ignores the BTLA's regulations, however, which set forth the requisite content of appeals brought pursuant to RSA 72:34-a.

■ According to the BTLA's rules, to appeal the denial of a tax exemption, a taxpayer must file with the BTLA, among other items, "[a] complete and specific statement of the grounds supporting the appeal." N.H. ADMIN. RULES, Tax 204.03(c)(4). As previously discussed, the August 31, 2001 petitions provided statements of the grounds for appealing the municipalities' abatement decisions, but did not provide statements of the grounds for appealing the exemption decisions. Moreover, the BTLA's regulations require an exemption appeal to include a "copy of the exemption application filed with the municipality and a statement of the municipality's action on the application." N.H. ADMIN. RULES, Tax 204.03(c)(5). The August 31, 2001 petitions did not attach this information. Thus, the petitions did not comply with the BTLA's rules regarding appealing municipal exemption decisions.

■ The petitioner next asserts that because its August 31, 2001 petitions put the municipalities on notice that it intended to appeal their exemption decisions, the BTLA should have accepted the petitions as appeals of the exemption decisions. We disagree.

We need not decide whether our traditionally liberal approach to court pleadings applies to administrative proceedings because, at most, the August 31, 2001 petitions gave notice of the petitioner's intent to file its

appeals of the exemption decisions separately from its appeals of the abatement decisions.

Moreover, regardless of the petitioner's intent, the record shows that it did *not* appeal the exemption decisions by September 1, 2001, as required by RSA 72:34-a, thus depriving the BTLA of jurisdiction over these appeals. *See Phetteplace v. Town of Lyme*, 144 N.H. 621, 624 (2000). Filing an appeal in a timely manner "is a *necessary prerequisite* to establishing jurisdiction in the appellate body." *Id.* at 625 (quotation omitted). The failure to file a timely appeal "is fatal regardless of accident, mistake, or misfortune." *Appeal of Estate of Van Lunen*, 145 N.H. 82, 86 (2000); *see Appeal of Roketenetz*, 122 N.H. 869, 870 (1982) (affirming BTLA's dismissal of appeal of selectmen's refusal to act on abatement request, even though appeal was only five days late).

The petitioner argues that in *East Coast Conference of the Evangelical Covenant Church of America, Inc. v. Town of Swanzey*, 146 N.H. 658, 660 (2001), we approved the trial court's determination that a church's failure to include its charitable exemption appeal in its appeal of a denial of a religious exemption was a non-fatal clerical error. To the contrary, we did not decide whether the trial court's determination was correct because the parties did not contest this issue on appeal.

Finally, the petitioner asserts that the period for filing a timely appeal of Laconia's failure to grant a charitable tax exemption was extended for two months pursuant to Laws 1995, 265:18 (codified as RSA 76:16-d, I (repealed 2002)).

RSA 76:16-d, I, provided that two months would be added to the deadlines in RSA 72:34-a "in the effective year of a property revaluation for towns having 9,000 or more parcels." Laws 1995, 265:18. The BTLA conducted an evidentiary hearing on whether Laconia had the requisite number of parcels for RSA 76:16-d, I, to apply. Because the BTLA's finding that Laconia lacked the requisite 9,000 parcels in tax year 2000 is supported by the evidence, we affirm its ruling that RSA 76:16-d, I, did not apply to the petitioner's appeal. As the petitioner notes, "RSA 76:16-d concerns itself with the actual parcel count." Thus, the petitioner's subjective belief that Laconia had more than 9,000 parcels is irrelevant.

*Affirmed.*

BROCK, C.J., and DALIANIS and DUGGAN, JJ., concurred.