Carroll
No. 2002-470

TOWN OF OSSIPEE

v.

WHITTIER LIFTS TRUST & a.

Argued: May 8, 2003
Opinion Issued: July 8, 2003

*Sager, Sager, Wunder & DePree, P.L.L.C.,* of Ossipee (*Richard D. Sager* on the brief and orally), for the plaintiff, Town of Ossipee.

*Wiggin & Nourie, P.A.,* of Manchester (*Donald C. Crandlemire* on the brief and orally), for defendant Whittier Lifts Trust.

*Arthur W. Hoover,* of Alton, on the brief and orally, for defendant Whittier Communications, Inc.

*Peter W. Heed,* attorney general (*Craig S. Donais,* assistant attorney general, on the brief and orally), for the State.

DALIANIS, J. The plaintiff, Town of Ossipee (town), appeals from an order of the Superior Court (*O'Neill,* J.) ruling that defendant Whittier Lifts Trust (Whittier Trust) is not liable for taxes levied against a State-owned communications tower (tower) on its property. In addition, the State appeals from a separate order of the Superior Court (*T. Nadeau,* J.) ruling that defendant Whittier Communications, Inc. (Whittier Communications) has a taxable interest in the tower under RSA 72:23 (Supp. 2002) and that the State, pursuant to its agreement with Whittier Communications, must reimburse the latter for any taxes levied against it for the use of the tower. We affirm both decisions.

The record supports the following relevant facts. Whittier Trust owns a parcel of real property in Ossipee located on Mount Nickerson. On June 4, 1996, it leased a portion of its property to Whittier Communications. Whittier Communications then entered into a sub-lease and license agreement (sub-lease) with the State dated August 28, 1997, to allow the State to construct a 180-foot communications tower on the property.

Whittier Communications and the State also entered into a contemporaneous license agreement (license), which granted Whittier

Communications the right to occupy a portion of the space on the tower and to sub-license space to entities providing telecommunications services. Whittier Communications has sub-licensed space on the tower to third party telecommunications providers for a rental fee, and it pays Whittier Trust a monthly rental based upon the rents generated from the sub-license agreements.

The town assessed the value of Whittier Trust's interest in the tower and the land beneath the tower for $224,943, of which $200,000 was attributable to the value added to the property by virtue of the tower. Whittier Trust sought a tax abatement from the town for the assessment on the tower, which was denied. Whittier Trust then filed an appeal with the board of tax and land appeals. The town filed a motion in superior court to challenge the validity of the sub-lease and license between the State and Whittier Communications, arguing that the agreements were invalid because they did not include language mandated by RSA 72:23 regarding the payment of taxes.

Following a hearing, the court ruled that the language required by RSA 72:23 was required to be inserted in the license, but was not required in the sub-lease. The court ordered the parties to amend the license to include the necessary language. This order was not appealed. By agreement of the parties, the abatement proceeding pending before the board of tax and land appeals was transferred to the superior court and incorporated into that case.

Subsequently, the superior court issued an order finding that Whittier Communications possessed a taxable interest in the tower through its licenses to third party providers and that the State, pursuant to the sub-lease, must reimburse Whittier Communications for any taxes levied against it. Finally, in a third order, the superior court ruled that Whittier Trust does not have a taxable interest in the tower. This appeal followed.

*I. State's Appeal*

The State argues on appeal that the trial court erred by ruling that: 1) Whittier Communications has a taxable interest in the tower; and 2) the State has a contractual obligation to reimburse Whittier Communications for any taxes arising out of its use of the tower. We first examine whether Whittier Communications has a taxable interest in the tower.

The assessment and collection of taxes must be based upon legislative authority. *N.E. Tel. & Tel. Co. v. City of Rochester*, 144 N.H. 118, 120 (1999).

> This court, of course, is the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole.

We interpret legislative intent from the statute as written, and therefore, we will not consider what the legislature might have said or add words that the legislature did not include. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation.

*Appeal of Brady*, 145 N.H. 308, 310 (2000) (quotations and brackets omitted). We do not look to the legislative history of a tax exemption statute unless its language is ambiguous or more than one reasonable interpretation exists. *Pennelli v. Town of Pelham*, 148 N.H. 365, 368 (2002).

RSA 72:6 (1991) provides that "[a]ll real estate, whether improved or unimproved, shall be taxed except as otherwise provided." "Real and personal property shall be taxed to the person claiming the same, or to the person who is in the possession and actual occupancy thereof, if such person will consent to be taxed." RSA 73:10 (1991). While characterized as personal property at the time of the sub-lease, telecommunications towers are now taxed as real estate in the town in which the property is situated. RSA 72:8-a (Supp. 2002). RSA 72:23, Real Estate and Personal Property Tax Exemption, in pertinent part, provides as follows:

The following real estate and personal property shall, unless otherwise provided by statute, be exempt from taxation:

I. (a) Lands and the buildings and structures thereon and therein and the personal property owned by the state, . . . unless said real or personal property is used or occupied by other than the state . . . under a lease or other agreement the terms of which provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property. . . .

(b) All leases and other agreements, the terms of which provide for the use or occupation by others of real or personal property owned by the state . . . , entered into after July 1, 1979, shall provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property no later than the due date. . . . All such leases and agreements shall include a provision that 'failure of the lessee to pay the duly assessed personal and real estate taxes when due shall be cause to terminate said lease or agreement by the lessor.' All such leases and agreements entered into on or after January 1, 1994, shall clearly state the lessee's obligations regarding the payment of both current and potential real and personal property taxes, and shall also state whether the lessee has an obligation to

pay real and personal property taxes on structures or improvements added by the lessee.

The superior court found that the license was the controlling agreement for purposes of RSA 72:23, I, and that Whittier Communications' act of renting space on the tower through sub-license agreements with third parties constitutes "use or occupation" of the tower for purposes of RSA 72:23. On appeal, the State asserts that Whittier Communications is not taxable because it must actually use or occupy property in order to have a taxable interest in the tower under RSA 72:23, I, and because it is not subject to an agreement within the meaning of the statute. It argues that Whittier Communications cannot be taxed for its use of the tower under RSA 72:23 because: 1) it does not actually use or occupy the tower; and 2) the trial court ruled that the sub-lease was not an agreement covered by the statute.

We note at the outset that it is arguable whether the tower is a tax exempt structure under RSA 72:23. The statute provides that exempt property includes "[l]ands *and* the buildings and structures *thereon and therein* and the personal property owned by the state." RSA 72:23, I(a) (emphasis added). Because the State does not own the land upon which the tower rests, it is arguable that the tower is not tax exempt. The town, however, does not develop this argument in its brief, but rather states in a footnote that the exemption status of the tower "may be subject to challenge." In addition, the town relied upon RSA 72:23 in support of its oral argument. Thus, we will treat the tower as tax exempt under RSA 72:23.

In both its brief and at oral argument, the State cites *Town of Franconia v. Granite State Concessions*, 122 N.H. 684 (1982), in support of its position that actual use or occupation is necessary for tax purposes. Contrary to the State's argument, however, we did not address the meaning of use or occupation in that case, but rather whether the agreement between the parties was an agreement contemplated by RSA 72:23. *Id.* at 686. While we have not addressed what constitutes use or occupation for purposes of RSA 72:23, I, we have addressed the issue in the context of charitable exemption cases under RSA 72:23, V. In such cases, we have held that the leasing of property to another individual or entity for charitable purposes constitutes a use of property on behalf of the lessor for purposes of RSA 72:23, V. *See, e.g., Appeal of Kiwanis Club of Hudson*, 140 N.H. 92, 95 (1995); *Senior Citizens Housing Dev. Corp. v. City of Claremont*, 122 N.H. 1104, 1107-08 (1982).

For example, in *Appeal of Kiwanis Club of Hudson*, the taxpayer, Kiwanis Club, sought a full charitable tax exemption under RSA 72:23, V

for its use of a function hall. *Appeal of Kiwanis Club of Hudson*, 140 N.H. at 93. Specifically, the club used the function hall one night a week for its own fundraising activities and rented the hall to other charitable organizations four nights a week. *Id.* In reversing the board of tax and land appeals' ruling that the club was not entitled to a complete tax exemption, we held that the rental of the hall to other charitable organizations for fundraising directly fulfills the organizations' charitable purpose, and that the act of renting the hall to other organizations was the club's *primary use* of the hall. *Id.* at 95. Similarly, in *Senior Citizens Housing Development Corporation*, we expressly stated that the renting of housing to low-income elderly and handicapped individuals was a "direct use" of the property by a charitable organization in performance of its charitable purpose. *Senior Citizens Housing Dev. Corp.*, 122 N.H. at 1107.

■ Cases from other jurisdictions also support the position that the leasing of property constitutes a use for purposes of tax exemption statutes. *See, e.g., Sisters of Providence v. Mun. of Anchorage*, 672 P.2d 446, 451 (Alaska 1983); *Krausz v. Maricopa County*, 28 P.3d 335, 339 (Ariz. Ct. App. Div. 2001); *Warden Plaza v. Board of Review*, 379 N.W.2d 362, 366 (Iowa 1985); *Appeal of Wirt*, 592 P.2d 875, 879-80 (Kan. 1979). We find these cases instructive and supportive of our own precedent and agree that one who leases property for a profit is using that property for purposes of RSA 72:23. Indeed,

> [t]o say that an investor who owns valuable property, real or personal, and leases it for profit is not using his property ignores the obvious fact that the owner-lessor is exercising his right to use the property just as surely as if he were utilizing it in a physical sense for his own objectives. The renting by the lessor and the physical use by the lessee constitute simultaneous uses of the property and when an owner leases his property to another, the lessee cannot be said to be the only one using the property. The owner is using it as he sees fit to reap a profit from his investment just as surely as if he physically operated the property.

*Sisters of Providence*, 672 P.2d at 451 (quotation and ellipsis omitted). While we recognize that Whittier Communications does not own the tower, it does have a license interest in it and has entered into sub-license agreements for the purpose of earning a profit. We consider such circumstances analogous to a lease between a property owner and a tenant for the purposes of this case.

■ Moreover, contrary to the State's position, Whittier Communications is subject to an agreement covered by RSA 72:23. In its March 2001 order, the trial court ruled that Whittier Communications' license with the State was subject to RSA 72:23 and ordered the parties to amend it to include the language specified in RSA 72:23. We have held that licenses are considered "other agreements, the terms of which provide for the use or occupation by others of real or personal property owned by the state" under RSA 72:23. *N.E. Tel. & Tel. Co.*, 144 N.H. at 121. As a result, because the license is an agreement covered by RSA 72:23, Whittier Communications is subject to taxation under RSA 72:23, I(a). Accordingly, we conclude that Whittier Communications, through its licensing of the tower, uses it for purposes of RSA 72:23, I, and, therefore, has a taxable interest in the tower.

The State argues, however, that even if Whittier Communications has a taxable interest in the tower, the State has no obligation to reimburse Whittier Communications for taxes paid on account of its use of the tower. First, although the State argued in its brief that the trial court's decision regarding the reimbursement issue was premature, at oral argument, counsel for the State conceded that we could decide the reimbursement issue on appeal.

Because a lease is a form of contract, we construe a lease by applying the standard rules of contract interpretation. *N.A.P.P. Realty Trust v. CC Enterprises*, 147 N.H. 137, 139 (2001). When construing disputed provisions in a lease, we must analyze the entire document to determine the meaning intended by the parties. *Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569 (1995). In the absence of ambiguity, the intent of the parties to a lease is to be determined from the plain meaning of the language used. *Id.* "The words and phrases used by the parties will be assigned their common meaning, and this court will ascertain the intended purpose of the lease based upon the meaning that would be given to it by a reasonable person." *ELCA of N.H., Inc. v. McIntyre*, 129 N.H. 114, 116 (1987). "The meaning of a contract is ultimately a matter of law for this court to decide, including the determination whether a contract term is ambiguous." *Echo Consulting Services*, 140 N.H. at 569 (quotation omitted).

■ Paragraph four of the sub-lease provides:

Taxes: The Sub-Lessee hereby warrants that the Leased Premises and improvements located thereon shall be exempt from taxation, with the exception of a portion of the service building that may be occupied by the Lessee/Licensee, pursuant to NHRSA 73:23 [*sic*]. It is expressly understood that the

> communications tower to be erected by the Sub-Lessee is personal property, and exempt from taxation pursuant to NHRSA 73 [*sic*] and *New England Telephone and Telegraph Co. v. Franklin.* In the event that the taxing municipality of Ossipee seeks to impose any municipal tax or other charges deriving from the demised premises, the communications tower, or any improvement located thereon, except those taxes imposed upon that portion of the service building occupied by the Lessee/Licensee, then the Sub-Lessee agrees to invoke those rights and privileges as the sovereign power to avoid such taxes, and to otherwise prevent the imposition of any such taxes or governmental charges, to include taking action in a court of appropriate jurisdiction to bar, prohibit or enjoin the imposition and/or collection of such taxes or municipal charges. *In the event such taxes or charges are in fact collected or imposed upon the Lessee, then the Sub-Lessee shall indemnify and hold Lessee harmless from such taxes or governmental charges within thirty (30) days of the payment by Lessee of any such tax or governmental charges.*

(Emphasis added.) We agree with the trial court that the language of the tax provision is clear and unambiguous, and provides for reimbursement to Whittier Communications for any taxes it pays based upon its use of the tower. The license, which is incorporated by reference in the sub-lease, expressly recognizes that Whittier Communications will have a license interest to operate and maintain a portion of the tower. In addition, the parties reference RSA 72:23 in the tax provision and were, therefore, aware that Whittier Communications could only be liable for taxes relating to the tower if it used or occupied the tower. Thus, it is reasonable to conclude that the parties intended that the State would reimburse Whittier Communications for any taxes it pays relating to its use of the tower. To interpret the tax provision otherwise would render the reimbursement language superfluous in light of RSA 72:23, I.

The State asserts, however, that it is not obligated to reimburse Whittier Communications because the sub-lease does not provide for reimbursement for taxes levied against intangible license rights. We find this argument lacks merit. The tax provision states broadly that it applies to "any municipal tax or other charges deriving from . . . the communications tower." A reasonable person reading this provision in conjunction with the sub-lease would interpret the tax provision as applying to taxes levied against Whittier Communications for its use of the tower. Thus, because we hold that Whittier Communications' act of renting

space on the tower constitutes a use, the State is obligated to reimburse it for any taxes it pays arising out of such use.

In reaching this decision, we do not address the valuation of the tower or what portion of it is taxable to Whittier Communications, as those issues were not addressed below and are irrelevant to the questions presented.

## II. Town's Appeal

The town argues that the trial court erred by ruling that Whittier Trust cannot be taxed for the value of the tower. While it does not dispute that, for purposes of this case, the tower is state-owned property otherwise exempt from taxation, the town asserts that Whittier Trust has a taxable interest in the tower under RSA 72:23 because the tower is located on Whittier Trust's property and Whittier Trust derives rental income from Whittier Communication's licensing of tower space. It argues that as owner of the property upon which the tower is situated, Whittier Trust is taxable for at least a portion of the tower's value as an improvement to its real estate.

As noted above, state-owned real estate or personal property is exempt from taxation *unless* it is *used or occupied* by other than the State. RSA 72:23, I(a). While Whittier Trust has an indirect connection to the tower through the collection of rental income from Whittier Communications' sub-license revenue, it is not a user or occupier of the structure under RSA 72:23. As we have stated previously, "occupation and use cannot be slight, negligible or insignificant." *Nature Conservancy v. Nelson*, 107 N.H. 316, 320 (1966). Here, Whittier Trust has no ownership or possessory interest in, or control over the tower. That Whittier Trust collects money that is generated from some other entity's use of the tower, or that the tower is located on Whittier Trust property, is simply too tenuous to constitute use and occupation of the tower for purposes of RSA 72:23.

Accordingly, we uphold the trial court's decision that Whittier Trust does not have a taxable interest in the tower for purposes of RSA 72:23.

*Affirmed.*

DUGGAN, J., concurred; MURPHY, C.J., and ABRAMSON and BURLING, JJ., superior court justices, specially assigned under RSA 490:3, concurred.