NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Board of Tax and Land Appeals
No. 2018-0217


APPEAL OF TOWN OF BELMONT
(New Hampshire Board of Tax and Land Appeals)

Argued:  January 8, 2019
Opinion Issued:  March 19, 2019


Mitchell Municipal Group, P.A., of Laconia (Laura Spector-Morgan on the brief and orally), for the petitioner.


Law Office of Joshua L. Gordon, of Concord (Joshua L. Gordon on the brief and orally), for the respondent.


BASSETT, J.  The petitioner, the Town of Belmont, appeals a decision of the New Hampshire Board of Tax and Land Appeals (BTLA) that, pursuant to RSA 72:36-a (2012), the respondent, the Robin M. Nordle 2013 Trust, is entitled to a 100% real estate tax exemption for a homestead in Belmont.  RSA 72:36-a provides that a person who meets certain qualifications set forth in the statute, and "who owns a specially adapted homestead which has been acquired with the assistance of the Veterans Administration," qualifies for a property tax exemption.  We affirm.

The material facts are not in dispute.  Louis Nordle served during the Vietnam War as a member of the United States Air Force.  He was honorably discharged in 1969.  In 1998, Louis and his wife, Robin Nordle, purchased a

summer camp in Belmont. In 2007, the Nordles demolished the original home and built a new home. The house was later transferred to the Robin M. Nordle 2013 Trust, the "taxpayer" in this case. Louis has a life estate in the trust and Robin is the trustee. In 2015, the United States Department of Veterans Affairs determined that Louis is totally and permanently disabled due to his service-connected disabilities. In 2016, Louis received a "Specially Adapted Housing Grant" from the Veterans Administration (VA) in the amount of $73,768, and used the funds to modify his home to accommodate his service-connected disability, by widening the doors, raising and leveling the floors, installing access ramps, and remodeling the bathroom.

In 2017, the taxpayer applied to the town for an exemption from property taxes pursuant to RSA 72:36-a. The town denied the application, determining that the "home was not 'acquired' or 'purchased' by or with the assistance of a VA loan." The town informed the Nordles that "the VA is providing a grant to adapt the home for Mr. Nordle's disabilities, however the statute regarding this exemption states that the property must be acquired with the assistance of the VA, which you have advised us it was not." In making its determination, the town relied upon advice from the New Hampshire Department of Revenue that, in order to be entitled to the property tax exemption, the VA "had to help 'purchase' the home not adapt it."

The taxpayer appealed to the BTLA. Following a hearing, the BTLA determined that the taxpayer's property is entitled to the full property tax exemption, disagreeing with the town's position that the statutory phrase "acquired with the assistance of the Veterans Administration" is limited to assistance with the purchase of the property. The BTLA reasoned that "the word 'acquired' in the statute has a plain meaning broader than simply 'purchased' (as in the purchase of a house with specially adapted improvements financed by a VA loan or mortgage)," and that because Louis "obtained, and is now in possession of, a specially adapted homestead . . . only because of the financial assistance he received from the VA," the taxpayer is entitled to the tax exemption set forth in RSA 72:36-a. As support for its conclusion, the BTLA referred to the "Grant Fact Sheet" for the VA's Specially Adapted Housing grant program that states that VA assistance is available to veterans who "may remodel an existing home if it can be made suitable for specially adapted housing." The BTLA determined that "[c]learly the improvements to the homestead" made by the Nordles satisfy this condition.

The town unsuccessfully moved for reconsideration. In denying the town's motion, the BTLA emphasized that

> [i]t would be illogical and an unnecessary hardship . . . to require a
> veteran to relocate in order to qualify for an exemption intended by
> the legislature to benefit one who is totally and permanently
> disabled due to his military service to our country . . . who needs

2

to live in a specially adapted homestead because of his disabilities as determined by the Veterans Administration and after satisfying all of its requirements for financial assistance to accomplish this purpose.

(Parentheses omitted.)  This appeal followed.

RSA 72:36-a, titled "Certain Disabled Veterans," provides:

Any person, who is discharged from military service of the United States under conditions other than dishonorable, or an officer who is honorably separated from military service, who is totally and permanently disabled from service connection and satisfactory proof of such service connection is furnished to the assessors and who is a double amputee of the upper or lower extremities or any combination thereof, paraplegic, or has blindness of both eyes with visual acuity of 5/200 or less as the result of service connection and <u>who owns a specially adapted homestead which has been acquired with the assistance of the Veterans Administration</u> or which has been acquired using proceeds from the sale of any previous homestead which was acquired with the assistance of the Veterans Administration, the person or person's surviving spouse, shall be exempt from all taxation on said homestead.

RSA 72:36-a (bolding omitted; emphasis added); see RSA 72:29, VI (Supp. 2018) (providing that, for purposes of RSA 72:36-a, "the ownership of real estate, as expressed by such words as 'owner,' 'owned' or 'own,' shall include those who have placed their property in a grantor/revocable trust or who have equitable title or beneficial interest for life in the subject property").

On appeal, the town argues that RSA 72:36-a "specifically limits the exemption to those veterans who have 'acquired' their specially adapted homestead with the assistance of the Veterans Administration," and "does not provide for an exemption for those who have 'adapted' their homestead with such assistance."  The town reasons that the taxpayer is not entitled to the tax exemption because the Nordles "did not utilize" Veterans Administration funds when they became the owners of the property in 1998, nor was the home "specially adapted" at that time.  The taxpayer counters that the word "acquire" does not refer only to the purchase of a home, but rather, that "the object of the transitive verb 'acquire' in RSA 72:36-a is a 'specially adapted homestead.'"  The taxpayer asserts that, because "[i]t was only with VA assistance that the home became specially adapted," it is entitled to the tax exemption.

Resolving this issue requires us to interpret RSA 72:36-a; therefore, our review is de novo.  See Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 703 (2010).

3

In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.

Petition of Carrier, 165 N.H. 719, 721 (2013). "A tax exemption statute is construed not with rigorous strictness but to give full effect to the legislative intent of the statute." Wolfeboro Camp School v. Town of Wolfeboro, 138 N.H. 496, 499 (1994) (quotation omitted); see Appeal of Public Service Co. of N.H., 124 N.H. 79, 84 (1983) (rejecting the argument that "a tax exemption law is to be construed restrictively against the taxpayer seeking the exemption").

The sole issue on appeal is the meaning of the phrase "who owns a specially adapted homestead which has been acquired with the assistance of the Veterans Administration" in RSA 72:36-a. The parties focus on the meaning of the word "acquire." The word "acquire" is not defined in RSA 72:36-a. Unless otherwise defined in a statute, "[w]ords and phrases shall be construed according to the common and approved usage of the language." RSA 21:2 (2012); see Kenison v. Dubois, 152 N.H. 448, 451 (2005). Black's Law Dictionary defines "acquire" as meaning "[t]o gain possession or control of; to get or obtain." Black's Law Dictionary 28 (10th ed. 2014). Webster's Dictionary defines "acquire" as meaning "to come into possession, control, or power of disposal of often by some uncertain or unspecified means." Webster's Third New International Dictionary 18 (unabridged ed. 2002). Based upon these definitions, the town contends that a property that "had been earlier acquired and was later modified" with the financial assistance of the VA does not satisfy the statutory requirement that the taxpayer "acquired" its specially adapted homestead with the assistance of the VA. The taxpayer contends that because it was only with the assistance of the VA that the homestead became specially adapted, the specially adapted homestead has been "acquired" with the assistance of the VA.

Here, the dictionary definitions of the word "acquire" reasonably support each party's position. Accordingly, we conclude that the statute is ambiguous. See Green v. Sch. Admin. Unit #55, 168 N.H. 796, 801 (2016). Under such

4

circumstances, we look to the legislative history to aid in our interpretation of the meaning of the statutory language. Id.; see Town of Ossipee v. Whittier Lifts Trust, 149 N.H. 679, 682 (2003). Although we agree with the town that the legislative history of RSA 72:36-a is "scant," we conclude that the legislative history that does exist supports the taxpayer's interpretation of the statutory language.

The New Hampshire legislature enacted RSA 72:36-a after the United States Congress passed a bill authorizing the Secretary of the VA to assist certain disabled veterans in acquiring specially adapted housing. See Pub. L. 85-857 (1958); Laws 1965, 291:1. The plain language in RSA 72:36-a defers to the VA's determination whether to provide a disabled veteran with assistance to acquire a specially adapted homestead. Therefore, a brief summary of the federal law provides useful context.

Pursuant to the federal law, the VA may assist veterans who are entitled to receive compensation for service-connected permanent and total disability "in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the nature of the veteran's disability, and necessary land therefor." 38 U.S.C. § 2101(a) (2014). Prior to providing assistance to an eligible veteran, the Secretary must find that: (1) "it is medically feasible for the veteran to reside in the proposed housing unit and in the proposed locality"; (2) "the proposed housing unit bears a proper relation to the veteran's present and anticipated income and expenses"; and (3) "the nature and condition of the proposed housing unit are such as to be suitable to the veteran's needs for dwelling purposes." 38 U.S.C. § 2101(a)(3)(A)-(C).

When enacted, the federal law only allowed those veterans with permanent and total service-connected disability due to the loss, or loss of use, of both lower extremities to qualify for VA assistance. See Pub. L. 85-857 (1958). Similarly, as originally enacted, RSA 72:36-a applied only to veterans with total and permanent service-connected disabilities due to double amputation of the legs or paraplegia. See Laws 1965, 291:1.

In 1980, the federal law was amended to expand the veterans eligible for VA assistance to include those with permanent and total service-connected disabilities due to "blindness in both eyes with 5/200 visual acuity or less," or "the anatomical loss or loss of use of both hands." Pub. L. 96-385, Title III, § 301(a) (1980). Accordingly, in 1987, the New Hampshire legislature amended RSA 72:36-a to expand the eligible service-connected disabilities to include double amputation of the upper or lower extremities "or any combination thereof," paraplegia, or "blindness of both eyes with visual acuity of 5/200 or less." Laws 1987, 200:1.

5

The intent of the amendment was to

> bring[ ] the New Hampshire language in line with the Federal language . . . . Without this, an amputee with a combination, say missing one arm and one leg, is not eligible. By adding the language or a combination thereof, our disabled veterans will now qualify for the homestead exemptions, that [the] committee unanimously felt that they were entitled to.

N.H.S. Jour. 1201 (1987). Thus, the manifest intent of the legislature is to align RSA 72:36-a with the federal law so that a veteran who qualifies for assistance from the VA to acquire a specially adapted homestead also qualifies under New Hampshire law for a property tax exemption. Because the legislature expressly defers to the VA's determination as to whether to provide a disabled veteran with assistance to acquire a specially adapted homestead, the meaning of the word "acquire" in the phrase "acquired with the assistance of the Veterans Administration" must be informed by the scope of the VA assistance authorized by federal law.

The VA is authorized to "assist a disabled veteran . . . in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the nature of the veteran's disability and necessary land therefor." 38 U.S.C. § 2101(a). The VA's assistance "shall be afforded under one of the following plans, at the option of the individual." 38 U.S.C. § 2102(a) (2014). Pursuant to such "plans," an eligible veteran may: (1) "elect[ ] to construct a housing unit on land to be acquired by such individual"; (2) "elect[ ] to construct a housing unit on land acquired by such individual prior to application for assistance"; (3) "elect[ ] to remodel a dwelling which is not adapted to the requirements of such individual's disability, acquired by such individual prior to application for assistance"; or (4) receive compensation "where the individual has acquired a suitable housing unit." 38 U.S.C. § 2102(a)(1)-(4).

The word "acquire" in this context, therefore, is not limited to the initial acquisition or purchase of a specially adapted home with the assistance of a VA loan. Rather, given the scope of assistance available from the VA, the term "acquire" encompasses remodeling a home that was itself acquired by the veteran prior to applying for VA assistance, but which was not adapted to the requirements of the veteran's disability at that time.

The town argues that it would be illogical for the legislature to intend, for example, that "a person could obtain a Veterans Administration grant of $10,000 for a relatively modest adaptation, and then be fully exempt from property taxes for the rest of his or her life." According to the town, "there is nothing in RSA 72:36-a . . . which suggests that veteran status alone should fully exempt someone from taxes." We disagree with the town's

6

characterization of the exemption as being based on "veteran status alone." As set forth above, the statute contains several criteria that must be met in order to qualify for a property tax exemption on a specially adapted homestead. These criteria include permanent and total service-connected disability due to double amputation, paraplegia, or blindness, in addition to meeting the other requirements under federal law for receiving VA assistance to acquire the special adaptations that enable the disabled veteran to live in the home. The legislature did not establish that a minimum expenditure be made in acquiring a specially adapted homestead, and we will not add language to the statute that the legislature did not see fit to include. See Petition of Carrier, 165 N.H. at 721. The BTLA correctly observed that "[i]f the Town believes the tax entitlement provided by the legislature . . . is overly generous, the obvious remedy is to seek amendment of the statute, not prevent its application to a qualified veteran."

In this case, the VA determined that, in order to accommodate Louis's service-connected disability, the taxpayer was eligible to receive $73,768 to remodel the homestead. Once the remodeling was completed, the taxpayer owned a specially adapted homestead which was "acquired with the assistance of the Veterans Administration." RSA 72:36-a. Accordingly, we affirm the BTLA's determination that the taxpayer is entitled to a 100% real estate tax exemption for the homestead in Belmont.

Affirmed.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.