NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2018-0182


HOYLE, TANNER & ASSOCIATES, INC.

v.

150 REALTY, LLC & a.;

MCLEAN COMMUNICATIONS, LLC

v.

150 REALTY, LLC & a.;

AT COMM CORPORATION

v.

150 REALTY, LLC & a.

Argued: March 6, 2019
Opinion Issued: July 30, 2019

Sheehan, Phinney, Bass & Green, PA, of Manchester (James F. Ogorchock, Megan C. Carrier, and Bryanna K. Devonshire on the brief, and Ms. Devonshire orally), for the plaintiffs.

Hinckley, Allen & Snyder, LLP, of Manchester (Christopher H.M. Carter and Jamie S. Myers on the brief, and Mr. Carter orally), for the defendants.

DONOVAN, J.  The defendants, 150 Realty, LLC and Harbour Links Estates, LLC, appeal orders of the Superior Court (Brown and Schulman, JJ.) denying their motions to dismiss or stay actions filed by the plaintiffs, Hoyle, Tanner & Associates, Inc. (HTA), McLean Communications, LLC (McLean), and At Comm Corporation.  The trial court ruled that the plaintiffs' claims relating to the defendants' imposition of certain parking rules and fees did not fall within the scope of identical arbitration clauses included in each of the plaintiffs' lease agreements.  The Trial Court (Brown, J.) also granted partial summary judgment to HTA and McLean on their declaratory judgment claims, concluding that the defendants' parking rules that assess fees for certain parking spaces were unenforceable.  We affirm.

Accepting the allegations in the plaintiffs' complaints to be true, Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 671 (2017), the pertinent facts are as follows.  The plaintiffs lease commercial space located at 150 Dow Street in Manchester.  Their tenancies commenced between 1992 and 2001, after they entered into separate lease agreements with the property owner, One Dow Court, Inc. (ODC).  The lease agreements allot each plaintiff a specific number of parking spaces adjacent to the 150 Dow Street building and allow the plaintiffs to use additional spaces in other parking areas.  Each agreement also provides that "lessee's parking rights are subject to lessor's reasonable rules and regulations."  (Capitalization omitted).

The agreements also contain identical provisions in a section captioned "applicable law," that state:

a. In the event of default on the part of lessee under the terms of this Lease, lessor shall be entitled to choose the forum lessor deems appropriate for purposes of enforcing its rights under this agreement and collecting any sums due lessor hereunder.  Specifically, lessor shall be able to, at lessor's option, pursue collection and enforcement in the appropriate District or Superior Court, or lessor shall be entitled to pursue binding arbitration at lessor's sole determination.

b. If lessor decides to submit any dispute between the parties pertaining to this lease to binding arbitration, lessor shall still be entitled to prejudgment attachment remedies in District or Superior Court for purposes of securing any future judgment obtained through the arbitration process. . . .  Lessor shall, in the first instance, have the right to select an arbitrator from the American Arbitration Association, with said arbitration to be

2

governed under the rules of the American Arbitration Association. Arbitration proceedings, including the selection of an arbitrator, shall be conducted pursuant to the rules, regulations and procedures in effect as promulgated by the American Arbitration Association.

    . . . .

d. In the event that lessee initiates an action against lessor, whether by suit or by arbitration, lessee shall be required to bring such action in the appropriate forum in New Hampshire.

(Capitalization omitted).

In the years following the execution of the lease agreements, ODC assigned HTA and McLean additional parking spaces at 150 Dow Street pursuant to certain lease amendments. However, ODC never charged the plaintiffs a fee for parking. According to the plaintiffs, the original property owner included the cost of parking in the base rent paid by the lessees.

In early 2017, the defendants purchased 150 Dow Street from ODC and thus assumed a landlord-tenant relationship with the plaintiffs. In August 2017, the defendants notified the plaintiffs of new parking rules effective as of October 1, 2017. The new rules require tenant employee vehicles to display a valid front parking tag and a valid rear window parking sticker, and impose monthly fees upon the tenants to validate the parking tags and stickers.

In September 2017, HTA filed a complaint against the defendants in the trial court contesting the new parking rules. The complaint alleges breach of contract and anticipatory breach and requests, inter alia, an injunction, declaratory judgment, and damages. McLean filed a similar complaint, with an additional claim of breach of the covenant of good faith and fair dealing. In October 2017, At Comm also filed a complaint against the defendants in another trial court, alleging the same claims as those alleged in McLean's complaint. After HTA and McLean initiated suit, the defendants filed demands for arbitration with the American Arbitration Association (AAA) alleging that the plaintiffs failed to comply with the new parking rules. Shortly thereafter, the Trial Court (Brown, J.) in the HTA action stayed the implementation of the new parking rules until the resolution of the underlying contractual disputes.

The defendants moved to dismiss the plaintiffs' actions or, in the alternative, stay the actions pending arbitration. They argued that the incorporation in the lease agreements of the AAA rules required that an arbitrator, rather than the court, decide whether the dispute was subject to arbitration. They also argued that, regardless of which forum decides this threshold question, the underlying dispute falls within the scope of the

arbitration clause and therefore must be resolved in arbitration. These motions were denied.

Shortly thereafter, the Trial Court (Brown, J.) granted a motion for summary judgment filed by HTA and McLean on their requests for declaratory judgment. Eventually, all three actions were consolidated, and the parties filed a joint motion requesting the trial court's approval of, inter alia, the plaintiffs' nonsuit, without prejudice, of all remaining claims, and the parties' stipulation that the trial court's orders on the motions to dismiss and summary judgment applied to all of the consolidated cases. The trial court granted the motion, and this appeal followed.

On appeal, the defendants contend that the trial court erred in two respects. First, they argue that the parties "clearly and unmistakably intended that an arbitrator, not the court, determine any question of arbitrability." Second, they argue that the dispute falls within the scope of the arbitration clause because the lease agreements allow the defendants to submit "any dispute" between the parties "pertaining to this Lease" to binding arbitration.

The defendants' arguments require that we interpret the language of the lease agreements. Because a lease is a form of contract, we construe a lease by applying the standard rules of contract interpretation. Town of Ossipee v. Whittier Lifts Trust, 149 N.H. 679, 685 (2003). The proper interpretation of a contract is ultimately a question of law for this court to determine. N.A.P.P. Realty Trust v. CC Enterprises, 147 N.H. 137, 139 (2001). A contract is interpreted to reflect the parties' intentions at the time of contracting. Id. In the absence of ambiguity, the intent of the parties to a contract is to be determined from the plain meaning of the language used. Whittier Lifts Trust, 149 N.H. at 685. The parties' contractual terms and phrases will be assigned their common meaning, and we will ascertain the intended purpose of the contract based upon the meaning that would be given to it by a reasonable person. See id.

When parties enter into an agreement to arbitrate certain disputes, the resolution of those disputes falls within the jurisdiction of the arbitrator, rather than the court. See RSA 542:2 (2007); see also John A. Cookson Co. v. N.H. Ball Bearings, 147 N.H. 352, 361 (2001) ("An arbitrator's jurisdiction over an issue depends upon the voluntary agreement of the parties."). The underlying disagreement on appeal is whether the parties' dispute involves a matter that the parties have contractually agreed to submit to arbitration. Thus, the parties disagree as to the substantive arbitrability of the dispute. See Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 734 (2014) ("Substantive arbitrability refers to whether a dispute involves a subject matter that the parties have contractually agreed to submit to arbitration." (quotation omitted)). However, as an initial matter, the parties disagree as to whether the

4

court or the arbitrator has the authority to decide the arbitrability of the dispute.

We have long held that the court, and not the arbitrator, determines the question of arbitrability. See Aetna Life & Cas. Co. v. Martin, 134 N.H. 90, 93 (1991). As with any general rule, however, there are exceptions. Thus, we have also held that parties to an arbitration agreement "may agree to submit even the question of arbitrability to the arbitrator for decision." Appeal of Police Comm'n of City of Rochester, 149 N.H. 528, 534 (2003) (quotation omitted). "Where the parties clearly and unmistakably submitted the issue of arbitrability to the arbitrator without reservation," the arbitrator, rather than the court, has the authority to make this determination. Id. (quotation omitted). Nonetheless, in the absence of contractual language "clearly and unmistakably provid[ing] otherwise, the question of whether the parties agreed to arbitrate is to be decided by the [court], not the arbitrator." Appeal of Town of Durham, 149 N.H. 486, 488 (2003) (quotations omitted); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).

Accordingly, we must determine whether the parties "clearly and unmistakably" provided for an arbitrator to decide arbitrability. In making this determination, we do not consider either the scope of the arbitration agreement or the merits of the dispute. See Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 530 (2019). Rather, we look to the terms of the lease agreements to determine whether, at the time of contracting, the parties clearly and unmistakably intended to delegate the arbitrability question to an arbitrator.[1] See Appeal of Police Comm'n of City of Rochester, 149 N.H. at 534; N.A.P.P. Realty Trust, 147 N.H. at 139 ("A lease is interpreted to reflect the parties' intentions at the time of contracting.").

The lease agreements do not expressly state that an arbitrator must decide the question of arbitrability. However, in arguing that the question must be decided by an arbitrator, the defendants point to the reference to the AAA rules in subparagraph (b) of the lease agreement provisions that requires any arbitration proceeding initiated by the defendants to be governed by the AAA rules. Rule R-7(a) of the AAA's Commercial Arbitration Rules and Mediation Procedures provides that the arbitrator "shall have the power to rule

---

[1] In Appeal of Town of Durham, we looked to the scope of the agreement to determine whether the arbitrator had jurisdiction to decide the arbitrability of the dispute. See Appeal of Town of Durham, 149 N.H. 486, 487-88 (2003) (analyzing the language of a collective bargaining agreement, which contained an express clause delegating arbitrability to an arbitrator, and reviewing the facts in the record to conclude that the agreement did not cover the employee at issue). To the extent that the court's analysis in Town of Durham may be viewed as an arbitrability determination, we clarify that, when deciding whether the parties clearly and unmistakably agreed to delegate the question of arbitrability to the arbitrator, we look only to the language of the contract to determine the parties' intent at the time of contracting. We do not need to decide the underlying issue of arbitrability to answer this question.

on . . . the arbitrability of any claim or counterclaim." Accordingly, the defendants contend that Rule R-7(a) "plainly delegates the issue of arbitrability to an arbitrator." Therefore, according to the defendants, the lease agreements' "incorporat[ion of] the AAA rules" demonstrates that the parties "clearly and unmistakably intended that an arbitrator, not the court, [would] determine any question of arbitrability."

We have stated that the parties may agree to submit the arbitrability of the dispute to the arbitrator either expressly or "implicitly by an arbitration clause written broadly enough to include the issue of arbitrability within its general subject matter." School Dist. #42 v. Murray, 128 N.H. 417, 420-21 (1986). We have not, however, determined whether the mere reference to the AAA rules "clearly and unmistakably" demonstrates the parties' intent to delegate the arbitrability question to an arbitrator.

The defendants contend that courts in other jurisdictions have "overwhelmingly [concluded] that arbitration clauses incorporating [the] AAA rules by reference delegate jurisdictional questions to the arbitrator." Indeed, numerous federal circuit courts have concluded that an arbitration agreement's incorporation of the AAA rules "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Oracle America, Inc. v. Myriad Group A.G., 724 F.3d 1069, 1074 (9th Cir. 2013); see Brennan v. Opus Bank, 796 F.3d 1125, 1131 (9th Cir. 2015) (collecting cases). Some state courts have reached the same conclusion. See Ahluwalia v. QFA Royalties, LLC, 226 P.3d 1093, 1098-99 (Colo. App. 2009) (collecting cases).

The majority of the cases cited by the defendants, however, involve arbitration agreements that not only require that the AAA or similar rules govern arbitration procedures, but further require that the forum in which to resolve the arbitrable disputes be arbitration. See, e.g., Brennan, 796 F.3d at 1128 (analyzing an agreement requiring that "any controversy or claim arising out of this [agreement] . . . shall be settled by binding arbitration" except claims for equitable relief); Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208, 211 (2d Cir. 2005) (concluding that a signatory to a contract referencing the AAA rules and requiring arbitration of "any controversy" arising under the agreement could not "disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability"). Thus, in those cases, when an agreement requires certain disputes to be submitted to arbitration governed by the AAA rules, there is no question that the AAA rules govern all disputes that fall within the scope of the arbitration agreement.

By contrast, the lease agreements here give the parties the ability to decide whether to submit a claim to arbitration or pursue the claim in a court of law. Subparagraph (a) within the "applicable laws" provisions of the lease agreements provides that, "[i]n the event of default on the part of [the plaintiffs] under the terms of [the lease]," the defendants are entitled "to choose the forum

[they] deem[] appropriate," including "District or Superior Court," for "purposes of enforcing [their] rights under this agreement and collecting any sums" due to them. Subparagraph (b) provides that the AAA rules govern only when the defendants choose to pursue binding arbitration. Thus, reading these provisions as a whole, see Moore v. Grau, 171 N.H. 190, 194 (2018), the lease agreements provide the defendants a choice of forum — arbitration governed under the AAA rules or a court of law governed by the laws of this State. Moreover, subsection (d) recognizes the plaintiffs' ability to pursue a claim in court or arbitration, with no mention of the AAA rules at all. In light of these provisions, which expressly require the AAA rules to apply only when the defendants submit a claim to arbitration, we fail to see how this single reference to the AAA rules, by itself, is sufficient to demonstrate that the parties clearly and unmistakably intended for an arbitrator to decide the question of arbitrability.

We recognize that subsection (a), by providing the defendants with the option to pursue a claim in court or in arbitration at their "sole determination," arguably gives the defendants the power to compel arbitration. It is unclear whether subsection (d) gives the plaintiffs a similar power to compel the defendants to submit to the forum of the plaintiffs' choice. This observation, however, further highlights the lack of clarity as to the parties' rights and obligations under the agreements, and, consequently, the intent of the parties when entering into the agreements. In light of these considerations, we cannot say that it is clear and unmistakable that the parties agreed, at the time of contracting, that an arbitrator, rather than the court, would decide the question of arbitrability based upon the reference to the AAA rules in subsection (b) alone.

The defendants argue that the forum selection provisions are "not so substantial as to defeat the obvious intent reflected in the Leases to delegate issues of arbitrability to the arbitrator." They cite cases from other jurisdictions holding that the incorporation of the AAA or similar rules clearly and unmistakably demonstrates the parties' intent to arbitrate arbitrability, even though the arbitration agreements also permit the parties to seek judicial intervention under certain circumstances. See Oracle, 724 F.3d at 1071, 1075-76; Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C., 77 F. Supp. 3d 237, 242, 248-50 (D. Mass. 2015); BAYPO Ltd. Partnership v. Technology JV, LP, 940 A.2d 20, 23, 26-27 (Del. Ch. 2007).

These cases are inapposite because, unlike the agreements before us, they all involve arbitration agreements that did not give either party discretion to choose the forum in which to resolve certain disputes. See Oracle, 724 F.3d at 1071, 1075-76; Hopkinton Drug, 77 F. Supp. 3d at 242, 250; BAYPO Ltd. Partnership, 940 A.2d at 23, 26-27. Rather, the agreements required arbitration unless the dispute involved a specific type of claim or when a party was seeking certain types of equitable relief. See Oracle, 724 F.3d at 1071,

7

1075-76 (analyzing an agreement that excepted from its arbitration requirement judicial actions relating only to the party's intellectual property rights or the other party's compliance with the agreement); Hopkinton Drug, 77 F. Supp. 3d at 242, 250 (analyzing an agreement that required arbitration of all disputes but did not prevent the parties from seeking preliminary injunctive relief in state or federal court to halt or prevent a breach of the agreement); BAYPO Ltd. Partnership, 940 A.2d at 23, 26-27 (analyzing an agreement that required arbitration of all disputes but did not limit the parties from seeking injunctive or equitable relief in court to protect rights and property or to maintain the status quo before, during, or after arbitration).

Here, the lease agreements do not require arbitration. Rather, they give the parties the option to choose between submitting a dispute to arbitration or pursuing a claim in a court of law. The provisions that permit the parties to bring an action in court, therefore, are not an exception to an arbitration requirement; they are an alternative to arbitration altogether. Because of the broad access to judicial relief provided by this alternative, we disagree with the defendants that the forum selection provisions should be given little weight in determining whether the parties intended to arbitrate arbitrability. Cf. BAYPO Ltd. Partnership, 940 A.2d at 26-27 (concluding that the "limited ancillary relief" the parties could seek from a court of law under the arbitration agreement did not provide "boundless and independent access to judicial relief").

We conclude that, in the absence of any additional language demonstrating an intent that the AAA rules govern the threshold question, it is neither clear nor unmistakable that the parties intended to delegate the arbitrability determination to an arbitrator given that the agreements expressly provide each of the parties with the option of filing suit in court or seeking arbitration. If the parties had intended that the references to the AAA rules be construed to delegate the question of arbitrability to an arbitrator, regardless of the choice of forum provisions, the parties could have included language that clearly expressed that intent. The absence of such language is particularly significant given our long-standing recognition that the court, rather than an arbitrator, decides arbitration in the absence of clear and unmistakable evidence providing otherwise. See Appeal of Town of Durham, 149 N.H. at 488. Accordingly, the trial court properly concluded that it had jurisdiction to determine the arbitrability of the dispute.

The defendants next argue that the trial court erred in concluding that the dispute was not subject to arbitration under the lease agreements. Reading select parts of subparagraphs (a) and (b) together, the defendants contend that these provisions entitle them to pursue binding arbitration to resolve "any dispute between the parties pertaining to" the lease agreements. Because the disputes at issue in the plaintiffs' trial court actions and in the

defendants' demands for arbitration "pertain" to the lease agreements, the defendants argue that the disputes must be arbitrated.

The defendants' argument concerning the scope of the arbitration provisions in the lease agreements presents a question of law for this court. State v. Philip Morris USA, 155 N.H. 598, 604 (2007). Bearing in mind the purpose and policy of arbitration provisions, we interpret such in accordance with the intention of the parties at the time the agreements were made. See id. While there is a presumption of arbitrability if the contract contains an arbitration clause, we may conclude that a particular grievance is not arbitrable if it is determined with positive assurance that the contract is not susceptible to an interpretation that covers the dispute. Id.

Subparagraph (a) entitles the defendants to pursue binding arbitration at their "sole determination." However, reading subparagraph (a) in its entirety establishes that the defendants have the right to compel arbitration "[i]n the event of default on the part of [the plaintiffs] under the terms of [the lease agreements], . . . for purposes of enforcing [their] rights under the agreement[s] and collecting any sums due [to the defendants] hereunder." Thus, the scope of the defendants' right to pursue binding arbitration under subparagraph (a) is limited to disputes that arise when the defendants seek to remedy a tenant's default under the terms of the lease agreements.

Subparagraph (b) applies when the defendants "decide[] to submit any dispute between the parties pertaining to this Lease to binding arbitration." However, subparagraph (b) does not contain any substantive language indicating what types of disputes can be arbitrated. In particular, it contains no language that authorizes the defendants to compel binding arbitration with respect to any additional disputes beyond those disputes included in subparagraph (a). Thus, reading subparagraphs (a) and (b) together, we conclude that the lease agreements authorize the defendants to compel arbitration only when the dispute relates to a lessee's default.

The defendants, however, argue that subparagraphs (a) and (b) provide two distinct triggers of arbitration rights. They assert that subparagraph (a) provides arbitration rights in the event of a default, and subparagraph (b) provides arbitration rights in any dispute that pertains to the lease agreements. Although subparagraph (b) explains what happens if the defendants decide to submit a dispute to binding arbitration, subparagraph (a) is the only provision that provides the defendants with any right to compel arbitration, and limits that right to disputes relating to a lessee's default. Subparagraph (b) provides the rules and procedures that apply when the defendants choose to submit a dispute to arbitration; its reference to "any dispute . . . pertaining to this Lease" refers to the defendants' ability to submit disputes to arbitration as set forth in subparagraph (a). Thus, subparagraph (a) provides the right to pursue

9

arbitration, while subparagraph (b) provides the rules that apply if the defendants elect to pursue arbitration.

These provisions, when read as a whole, demonstrate that subparagraph (b) applies only if the defendants choose to pursue arbitration under subparagraph (a), and cannot be read as providing a right to arbitration independent of that set forth in subparagraph (a). Therefore, we conclude that the agreements authorize the defendants to compel arbitration only in the event of a default. Reading subparagraph (b) as providing a separate right to pursue arbitration in broader circumstances than the right to pursue arbitration in subparagraph (a) would render the express language in subparagraph (a) superfluous. Because this interpretation is contrary to our canons of contract interpretation, we decline to adopt it. See Moore, 171 N.H. at 194 ("[When] interpreting a contract, we consider the contract as a whole . . . ." (quotation omitted)).

The inquiry does not end here, however, because the parties' dispute may fall within the provisions of subsections (a) and (b) if it involves a default by the plaintiffs under the terms of the lease agreements. See Philip Morris USA, 155 N.H. at 604. The Trial Court (Brown, J.) did not expressly rule on this question, but it determined that the defendants "failed to establish that the imposition of a parking fee separate from the lessees' rent, where the lessees' rent previously included parking, is a reasonable rule or regulation and not a substantive amendment to the lease." In concluding that the new parking rules are not terms of the lease agreements, the trial court, in essence, found that the parties' dispute did not involve a breach of the terms of the lease agreements.

The defendants do not appear to directly challenge the substance of the trial court's ruling. Rather, they argue that the trial court erred in deciding this issue because it "impermissibly considered the merits of [the defendants'] underlying claims." They contend that the trial court should have considered whether the issue, "on [its] face," fell within the lease agreements' arbitration provisions. In other words, they argue that the court should have limited its arbitrability analysis to the parties' allegations — concerning the enforceability of the new parking rules and whether the plaintiffs violated them — to determine whether the dispute falls within the arbitration agreement.

In Appeal of AFSCME Local 3657, we rejected a similar argument. See Appeal of AFSCME Local 3657, 141 N.H. 291, 294-95 (1996). There, the appellant argued that its conclusory allegation against the appellee was sufficient, without more, to require submitting the dispute to arbitration under the terms of the collective bargaining agreement (CBA), because "any substantive review of the [agreement] would inappropriately involve" a decision on the merits. Id. at 293-94. In rejecting this argument, we recognized our adherence to the "positive assurance" test, which "raises a presumption of

10

arbitrability that, absent an express exclusion, may be defeated only by the most forceful evidence of a purpose to exclude the claim from arbitration." Id. at 294 (quotation omitted). However, we held that this rule did not preclude us from determining the arbitrability of a dispute, "even if this requires interpreting the [agreement] to the extent necessary to determine whether the dispute presents a colorable issue of contract interpretation." Id. at 295 (quotation omitted). We therefore interpreted the relevant language of the CBA to determine whether it was "susceptible of an interpretation that covers the dispute." Id. at 294-95 (quotation omitted) (concluding that the appellant's grievance failed to allege a violation of the terms of the CBA, and therefore was not subject to arbitration under the CBA).

Here, the defendants can compel the plaintiffs to arbitrate a dispute, but only if the dispute relates to a default on the part of the plaintiffs of a term of the lease agreements. The defendants' allegation that the plaintiffs refuse to comply with the new parking rules forms the basis of their demands for arbitration. Accordingly, it was proper for the trial court to interpret the terms of the lease agreements to the extent necessary to determine whether the defendants' claim presents a colorable issue of contract interpretation — specifically, whether the new parking rules upon which the alleged default is based constitute enforceable terms of the lease agreements. We fail to see how the defendants' claim presents a colorable issue of contract interpretation when their arbitration claim is based upon alleged violations of new, unilaterally-imposed rules that would alter a material benefit previously bargained for by requiring each plaintiff to pay hundreds of dollars every month to maintain their current use of parking spaces. See In the Matter of Larue & Bedard, 156 N.H. 378, 381 (2007) ("It is a fundamental principle of contract law that one party to a contract cannot alter its terms without the assent of the other party." (quotation omitted)). Moreover, given that the defendants do not challenge the substance of the trial court's ruling that the new parking rules are not enforceable terms of the lease agreements, we conclude that, under the circumstances before us, the defendants' claim fails to present a colorable claim of contract interpretation subject to arbitration under the lease agreements.

The defendants point to the unpublished decision in Private Jet Services Group, Inc. v. Marquette University, No. 14-cv-436-PB, 2015 WL 2228041 (D.N.H. May 12, 2015), to support their position regarding the trial court's arbitrability determination. However, in Private Jet, the federal court concluded that the plaintiffs agreed to arbitrate the question of arbitrability and, therefore, did not reach the question of arbitrability. Id. at *2-3. Nonetheless, the defendants rely upon this case, in part, as an example of a court expressing reluctance to scrutinize the facts to avoid deciding the merits of the underlying dispute. Id. at *3. However, the federal court expressed this reservation only after it had concluded that the arbitrability question should be

decided by the arbitrator.  Id.  Thus, we fail to see how this case advances the defendants' position

Accordingly, we affirm the trial courts' orders denying the defendants' motions to dismiss or stay pending arbitration.  All arguments the defendants raised in their notice of appeal, but did not brief, are deemed waived.  In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

LYNN, C.J., and HICKS and BASSETT, JJ., concurred.

12